UNITED STATES, Appellee,

v.

Daniel H. CARPENTER, Disbursing Clerk First Class, U.S. Navy, Appellant.

No. 98–1050.
Crim.App. No. 97–2146.

U.S. Court of Appeals for the Armed Forces.

Argued March 2, 1999.

Decided Aug. 31, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN and EFFRON, JJ., joined. CRAWFORD, J., filed an opinion concurring in the result.

For Appellant: *Lieutenant Commander R.C. Klant*, JAGC, USN (argued).

For Appellee: *Captain Michael D. Carsten*, USMC (argued); *Commander Eugene E. Irvin*, JAGC, USN, and *Colonel K.M. Sandkuhler*, USMC (on brief).

Judge GIERKE delivered the opinion of the Court.

Before a general court-martial composed of officer members, appellant was charged with desertion, larceny, and forgery, in violation of Articles 85, 121, and 123, Uniform Code of Military Justice, 10 USC §§ 885, 921, and 923, respectively. He pleaded guilty to unauthorized absence (UA), in violation of Article 86, UCMJ, 10 USC § 886, as a lesser-included offense of desertion, but not guilty to desertion, larceny, and forgery. He was convicted as charged. The adjudged and approved sentence provided for a dishonorable discharge, confinement for 15 years,

total forfeitures, reduction to the lowest grade, and a $150,000 fine, with provision for an additional 3 years' confinement if the fine was not paid. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

WHETHER THE LOWER COURT ERRED IN FINDING THAT ASSISTANT TRIAL COUNSEL'S ARGUMENT REGARDING APPELLANT'S PRESENCE AND TESTIMONY AT TRIAL DID NOT IMPROPERLY INVITE THE MEMBERS TO USE APPELLANT'S EXERCISE OF HIS CONSTITUTIONAL RIGHTS AS EVIDENCE OF HIS GUILT AND, THUS, WAS NOT CONSTITUTIONAL ERROR.

For the reasons set out below, we affirm.

### Factual Background

The prosecution's proof of larceny and forgery rested primarily on the testimony of Lieutenant Junior Grade (LTJG) Meier, the Disbursing Officer of the USS ELLIOTT. Appellant was the leading Petty Officer (LPO) in the disbursing office. On March 13, 1996, a United States Treasury check made payable to appellant in the amount of $150,000 was cashed at a local bank. LTJG Meier testified that the check was stolen from the safe in his disbursing office and his signature on the check was forged. Expert testimony established that LTJG Meier's signature on the check was forged and appellant's endorsement on the back of the check was genuine. Expert testimony also established that appellant's fingerprint was on the check.

LTJG Meier received nonjudicial punishment for dereliction of duty because of his lax administration of the disbursing office. He testified under a grant of testimonial immunity.

Appellant admitted cashing the check but testified that he did so at LTJG Meier's direction and that he gave the $150,000 to LTJG Meier. He testified that LTJG Meier gave him the check, told him what denomina-tions of bills were needed, and asked him to arrange the bank pickup of cash. He testi-fied that he cashed the check and gave the money to LTJG Meier at a McDonald's res-taurant on the afternoon of March 14, 1996.

Appellant testified that he later learned that four Treasury checks were missing from the disbursing office. When he learned that LTJG Meier was going to deny that he had received the cash, appellant went UA be-cause he was frightened and did not think that anyone would believe him instead of LTJG Meier. He explained, "Mr. Meier is an officer, I'm an enlisted."

Through cross-examination and rebuttal evidence, the prosecution advanced its theory that appellant had concocted his testimony to portray himself as an innocent dupe of LTJG Meier. During cross-examination, appellant testified that it did not strike him as unusual to obtain cash without the Disbursing Officer being present. He testified that he and Dis-bursing Clerk Third Class (DK3) Brockman had obtained cash on other occasions without LTJG Meier being present. In rebuttal, the prosecution produced the testimony of DK3 Brockman, who testified that he had never obtained cash from a bank without the Dis-bursing Officer being present, and he had never obtained cash with appellant without the disbursing officer being present.

On further cross-examination of appellant, the prosecution elicited admissions that he supported himself while UA in the Phillipines by selling blue jeans, income from invest-ments, and a computer business. Appellant admitted that he did not report any of his income on his 1995 tax returns and that he committed "tax fraud."

The most devastating evidence was elicited during the prosecution's cross-examination of appellant about his delivery of the cash to LTJG Meier on March 14. Appellant had testified that LTJG Meier called him on the morning of March 14 and suggested that they meet and transfer the money later in the day at a McDonald's restaurant, and that he had delivered the money as agreed. Ap-pellant also had testified that on the morning of March 14, Disbursing Clerk Seaman (DKSN) Yerkey had seen the bag of money

and teased appellant because he was protective about it.

On cross-examination, the prosecutor concentrated on the date of the transaction. When confronted with DKSN Yerkey's testimony that she saw the money on March 15, appellant testified that DKSN Yerkey was mistaken. The cross-examination continued as follows:

Q. Are you sure that Yerkey was not correct and it wasn't the 15th?

A. I am positive, sir.

Q. Couldn't of been the 16th?

A. No, sir.

Q. How about the 17th?

A. No, sir.

Q. You're absolutely positive it was the 14th of March?

A. Yes, sir.

Q. That would have been a Thursday?

A. Yes, sir.

Q. And that's the day you and Meier gave the—he gave you the money, excuse me, you gave him the money and you left?

A. The best I can remember. Yes, sir.

Q. Now wait a minute. The best you can remember. You're telling me absolutely, positively—

A. I remember Thursday, sir.

Q. I want to know if you are sure or you're not sure. This is very important.

A. The best I can remember it was Thursday.

Q. Which is it? I'm not trying to trick you. I just want to know. Are you sure it was the 14th or are you not sure it was the 14th?

[Civilian defense counsel]: I'll object. Argumentative. He has already answered that he was not sure, Your Honor.

[Military judge]: I'll let you re-ask the question. Overruled.

Q. How sure are you that it occurred on the 14th?

A. Ninety percent.

In rebuttal, after appellant had completed his testimony, the prosecution introduced testimony, ship's deck logs, and muster reports showing that LTJG Meier was at sea on the USS ELLIOTT until approximately 3:00 p.m. on the afternoon of March 15. Appellant agreed to a stipulation of fact that the USS ELLIOTT was underway at sea from March 8 until approximately 3:00 p.m. on March 15. LTJG Meier testified that he was on board the USS ELLIOTT at that time, performing duties as a helicopter control officer. Lieutenant Clements, LTJG Meier's superior, corroborated LTJG Meier's testimony that he was aboard the USS ELLIOTT until it docked on the afternoon of March 15 and that he never left the ship until it docked.

The closing arguments of both sides focused on the corroborating evidence or lack thereof and the credibility of LTJG Meier and appellant. The prosecution's theme was that appellant could not rebut the overwhelming evidence that he cashed the check, and so he decided to "try a boldface lie and see if it sticks." The prosecutor characterized the defense strategy as "throw out some wild crazy story" and "argue that's reasonable doubt." He also argued that appellant "lied to his wife about being UA" and admitted being a tax evader; that he was contradicted by DK3 Brockman; and that his "wild crazy" story of the transfer to LTJG Meier was contradicted by the overwhelming evidence that LTJG Meier was at sea until the afternoon of March 15. The prosecutor argued, "But not only did he lie in the past, but he lied right on the stand, looking right at each of you, looking right in your eyes, and we caught him in it, many times over."

The defense argument focused on the believability of appellant's testimony. Regarding the dates of the purported transfer of funds to LTJG Meier, defense counsel argued, "What I'm getting at folks, is that people—misrecollection [sic] is a common thing. People make mistakes on dates. And this case does not rise and fall on that mistake."

The prosecution's rebuttal argument began as follows:

Thank you, Your Honor. Mr. President, members, there is only one witness who has testified in this court-martial *who had the luxury and the benefit of seeing all the Government's witnesses and seeing all the*

*Government's evidence before taking the stand and testifying, and that's the accused.* And remember, as a bonus, he had a three-day weekend to prepare for his testimony.

(Emphasis added.)

Although appellant was represented by both civilian and military counsel, neither of appellant's lawyers objected to the above argument or requested the military judge to take any remedial action with respect to it. The military judge did not initiate any action *sua sponte.*

### Discussion

Appellant now asserts that the prosecutor's comment on his presence during the trial and his ability to tailor his testimony was an error of constitutional dimension. Appellant argues that the prosecution improperly invited the members to infer guilt from appellant's exercise of his constitutional right to be present and confront the witnesses against him.

The Government argues that the prosecution argument was not constitutional error because it merely highlighted what was obvious to the members. The Government further argues that, even if the argument was improper, it does not rise to the level of plain error.

▆ Because there was no defense objection to the prosecution's argument, we review for plain–error. RCM 919(c), Manual for Courts–Martial, United States (1995 ed.).* Under a plain–error analysis, appellant has the initial burden of persuasion. He must show that there was an error, that it was plain or obvious, and that it materially prejudiced a substantial right. Only if appellant meets that burden of persuasion does the burden shift to the Government to show that the error was not prejudicial. *United States v. Powell,* 49 MJ 460, 464–65 (1998). If the plain error is constitutional error, the Government must convince us beyond a reasonable doubt that the error was not prejudicial. *Id.* at 465 n. *.

On several occasions, this Court has commented that it is improper for a prosecutor to ask the court members to infer guilt because an accused has exercised his constitutional rights. *See United States v. Turner,* 39 MJ 259, 262 (CMA 1994) (improper to comment on appellant's refusal to consent to search); *United States v. Toro,* 37 MJ 313, 318 (CMA 1993) (improper to comment of exercise of right to remain silent); *United States v. Edwards,* 35 MJ 351, 355 (CMA 1992) (improper to comment on refusal to plead guilty); *United States v. Clifton,* 15 MJ 26, 29 (CMA 1983) (improper to argue that accused "asserted his rights" and "fought this every inch of the way"); *see also United States v. Causey,* 37 MJ 308, 311 (CMA 1993) (improper to urge members to reject innocent ingestion defense in drug cases in order to deter others from making similar claims).

This Court has not specifically ruled on the propriety of a prosecution argument that an accused has had the opportunity to shape his testimony by his presence throughout the trial and opportunity to hear all the witnesses. In *Agard v. Portuondo,* 117 F.3d 696, 709 (1997), the Second Circuit held, in a split decision, that such an argument violates the Sixth Amendment. *Agard* was not a plain error case, because defense counsel objected to the argument and asked for a mistrial. *Id.* at 707.

During direct review of appellant's case, the Court of Criminal Appeals reviewed state court decisions on this issue as follows:

> The highest courts in Connecticut, Maine, Vermont, and Massachusetts have concluded that such prosecutorial argument is improper. *State v. Cassidy,* 236 Conn. 112, 672 A.2d 899, 905–09 (1996); *State v. Jones,* 580 A.2d 161, 162–63 (Me. 1990) (prosecutor's argument was improper but the defendant failed to preserve the issue); *State v. Hemingway,* 148 Vt. 90, 528 A.2d 746, 747–48 (1987); *Commonwealth v. Person,* 400 Mass. 136, 508 N.E.2d 88, 90–91 (1987). On the other hand, the Supreme Court of Michigan and intermediate appellate courts from other States have held otherwise. *See People v.*

---

* This provision is unchanged in the 1998 edition of the Manual.

*Buckey,* 424 Mich. 1, 378 N.W.2d 432, 436–39 (1985); *see also State v. Grilli,* 369 N.W.2d 35, 37 (Minn.Ct.App.1985).

Unpub. op. at 4.

The foregoing survey of federal and state cases demonstrates that the prosecutor in this case was treading on dangerous ground when he commented on appellant's ability to observe the witnesses and shape his testimony. Nevertheless, we need not decide if the prosecutor's comment was plain error, because we are satisfied beyond a reasonable doubt that any error was harmless. *See United States v. Powell, supra.*

 In a harmless error analysis, the lack of defense objection is relevant to a determination of prejudice. We have often observed that the lack of a defense objection to improper argument is "some measure of the minimal impact" of a prosecutor's improper comment. *United States v. Nelson,* 1 MJ 235, 238 n. 6 (CMA 1975), citing *United States v. Saint John,* 23 USCMA 20, 48 CMR 312 (1974); *United States v. Ryan,* 21 USCMA 9, 44 CMR 63 (1971); *United States v. Wood,* 18 USCMA 291, 40 CMR 3 (1969). The uncontroverted and overwhelming evidence showed that appellant cashed a check for $150,000, payable to himself. The purported signature of LTJG Meier was forged; the endorsing signature of appellant was genuine. Appellant's defense was improbable from the outset, and it totally collapsed when he was contradicted by DK3 Brockman and confronted with the prosecution's iron-clad "alibi" evidence, showing that the transfer of money to LTJG Meier could not have happened because appellant was ashore and LTJG Meier was at sea when appellant said it happened.

The prosecution's closing argument was that appellant had concocted a "wild crazy" story. While the prosecutor's comment in rebuttal suggested that appellant had tailored his testimony after hearing the Government's witnesses, the prosecution argument as a whole suggested that appellant did not tailor his testimony very well. While appellant characterizes this case as a "swearing contest between him and the Disbursing Officer," Final Brief at 7, appellant's credibility totally collapsed after the prosecution's case in rebuttal. Accordingly, we hold that any error in the prosecution's rebuttal argument was harmless beyond a reasonable doubt.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

CRAWFORD, Judge (concurring in the result):

I agree with the majority. If there was error, it was not plain error. I write separately to explain why there was no error. First, the statement in question in this case was not in the Government's initial argument but in its rebuttal argument. Second, this rebuttal was prompted by the defense argument on the credibility of other witnesses and the beginning of direct examination of appellant.

This is not a case where the prosecution in the first instance comments on an accused's right to remain silent and his presence in the courtroom. The comment by the prosecutor here was in response to the direct examination of appellant, as well as to defense counsel's closing argument.

The assistant trial counsel opened his rebuttal argument as follows:

Thank you, Your Honor. Mr. President, members, there is only one witness who has testified in this court-martial *who had the luxury and the benefit of seeing all the Government's witnesses and seeing all the Government's evidence before taking the stand and testifying,* and that's the accused. And remember, as a bonus, he had a three-day weekend to prepare for his testimony.

[Trial counsel] cross-examined the accused yesterday, as to his story of what happened. Now, in real life in the courtroom, people don't wither under cross-examination. It's not like the way it happens on TV, where people just fall apart and say, yes, I did it. So, it doesn't happen that way in real life. In this case, we can't expect it to happen because this accused is

a skilled, experienced, trained liar. He knows how to look you right in the eye and tell you a lie.

(Emphasis added.) None of appellant's trial defense lawyers objected to the above argument or requested that the military judge take any remedial action with respect to it. Also, the military judge did not initiate any ameliorative action.

Court members are not oblivious to what happens at a trial. Most see movies, watch television, and are familiar with the stages of a trial. Here, the prosecution was merely commenting on the obvious after being invited to make such a response.

Trial defense counsel invited this comment when beginning the direct examination of appellant, as follows:

Q. Petty Officer Carpenter, how long have you served in the Navy?

A. Seven years, sir.

Q. Are you testifying under a grant of immunity?

A. No, sir.

Q. Do you understand and have I explained to you that you have a right under the United States Constitution Fifth Amendment to remain silent?

A. Yes, sir.

TC: Objection. Bolstering.

Q. Petty Officer Carpenter, do you know that you have taken an oath to tell the truth today?

A. Yes, sir.

Q. And are you aware of the penalties for not telling the truth?

A. Yes, sir.

This case is like *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988). In *Robinson*, the Court held that the prosecutor's reference to the defendant's failure to testify, despite the opportunity to do so, was a fair response to the defense counsel's argument and, thus, not error. *Id.* at 32, 108 S.Ct. 864.

While the defendant has the right to have the jury instructed not to draw any inference from his failure to testify, *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), the courts should recognize that, in some instances, this may very well be futile. But this is not a case of the defendant not testifying. Here, the defendant testified and had a choice as to when to testify; to ask the members to bury their heads in the sand, though perhaps laudable, may very well be the wrong approach. *Agard v. Portuondo*, 159 F.3d 98 (2d Cir. 1998), *cert. granted*, — U.S. —, 119 S.Ct. 1248, 143 L.Ed.2d 346 (1999).