UNITED STATES

v.

**Jemima HARVEY, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCCA 200001040.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 7 Jan. 1999.

Decided 30 July 2004.

**612**

LCDR R.D. Evans, Jr., JAGC, USNR, Appellate Defense Counsel.

LT Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

Before PRICE, SUSZAN, and HARRIS, Appellate Military Judges.

SUSZAN, Judge:

Contrary to her pleas, a special court-martial consisting of officer and enlisted members convicted the appellant of conspiracy, false official statement, wrongful use of lysergic acid diethylamide (LSD), methamphetamine and cocaine, wrongful inhalation of "Glade" aerosol with the intent to become intoxicated, wrongful possession of methamphetamine and cocaine, and communication of a threat (two specifications), in violation of Articles 81, 107, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 912a, and 934. The members sentenced the appellant to confinement for 60 days, reduction to pay grade E–1, forfeiture of $639.00 pay per month for two months, and a bad-conduct discharge. The convening authority disapproved the finding of guilty of wrongful use of LSD and approved the sentence as adjudged.

After carefully considering the record of trial, the appellant's assignments of error [1], and the Government's response, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Presence of the Officer Who Convened the Court–Martial in the Courtroom Gallery and Unlawful Command Influence

In her first assignment of error, the appellant contends that she did not receive a fair trial because the officer who convened her court-martial was present in the courtroom during a portion of her court-martial. She asserts that his presence constituted an

1. I. UNLAWFUL COMMAND INFLUENCE PRECLUDED APPELLANT'S RIGHT TO A FAIR TRIAL.
   II. TRIAL COUNSEL'S IMPROPER ARGUMENTS PREJUDICED APPELLANT'S RIGHT TO A FAIR TRIAL.
   III. THE GOVERNMENT'S USE OF UNCHARGED MISCONDUCT PREJUDICED APPELLANT'S RIGHT TO A FAIR TRIAL.
   IV. THE EVIDENCE WAS INSUFFICIENT FOR THE FINDINGS AS TO CHARGE II AND AS TO CHARGE III, SPECIFICATION 5.
   V. THE JUDGE ERRED IN DENYING THE MOTION FOR FINDINGS OF NOT GUILTY AS TO SPECIFICATIONS 2 AND 3 OF CHARGE IV, OR ALTERNATIVELY, THE EVIDENCE WAS INSUFFICIENT FOR THE MEMBERS' FINDINGS OF GUILTY.
   VI. APPELLANT WAS DENIED HER RIGHT TO A FAIR TRIAL WHEN THE JUDGE CONFERRED WITH THE MEMBERS OFF THE RECORD AND THE MEMBERS DISCUSSED THE EVIDENCE PRIOR TO CLOSING FOR DELIBERATIONS.
   VII. THE CONVENING AUTHORITY ERRED IN HIS ACTION BY FAILING TO REPORT ON COMPANION CASES.

actual and apparent unlawful command influence over the members.

The convening authority at the time the appellant's court-martial was convened and the charges referred was Major P.J. Loughlin, United States Marine Corps, Commanding Officer of Headquarters and Headquarters Squadron (H & HS), Marine Corps Air Station, Yuma, Arizona. He signed the convening order, detailing five officer members. He also signed the amendment to the convening order detailing four enlisted members and removing an officer member. After challenges, one officer and three enlisted members remained to hear the case. By the time trial on the merits commenced before those four members, Lieutenant Colonel M.L. Saunders had succeeded Major Loughlin in command and Major Loughlin assumed duties as Executive Officer.

After the trial counsel finished his closing argument on findings, there was a brief recess before the military judge gave instructions to the members. After the recess, in an Article 39a, UCMJ, session, the following discussion ensued:

MJ: The court will come to order. All parties present when the court recessed are again present.

The members are absent.

During the last recess—I guess I should say during the closing arguments of counsel the courtroom was pretty full of spectators. I saw an individual come in, sit down in the courtroom. During the last recess I just said to the trial counsel, who's the man in the flight suit? He told me it was the XO of the Squadron which happens to be our convening authority in this case, the individual actually picked the members, referred the case to trial, sat in on closing arguments. I want to make that part of the record.

Defense, do you want to be heard on this?

DC: Yes, sir, we do. We'd like to ask for a mistrial at this point because of his presence. It was obvious—I didn't know he was there at the time. It with [sic] obvious during the whole closing argument that the panel was looking over our shoulder.

MJ: I didn't see that.

DC: We believe Captain Cisneros, the President, is intimately familiar with Major Loughlin.

MJ: Well, she may be the only individual that knows him because the other enlisted members are not from that Squadron and I have no idea whether they even recognized or knew who he was. I can tell you that I'm about as far away from him as they were and I couldn't even tell whether he was an officer or not because he was in a flight suit. I couldn't see any rank insignia on his name patch.

DC: But Captain Cisneros knows him.

MJ: Oh, I know she does.

DC: And it's a small base. Everybody knows the XO of H & HS. It's our opinion that he's going to influence their deliberation and influence the weight. He heard all the evidence, you know, and they're going to be influenced by that fact.

MJ: Okay. Your motion for a mistrial is denied. But, if you desire, I will give a limiting instruction, but that's a choice you're going to have to make on the limiting instruction in whether you want to highlight it to the members, specifically if the enlisted members did not know who he was, or whether you want me to give them a limiting instruction telling them that they should not consider it whatsoever, the fact that the convening authority sat in for the closing arguments.

DC: No, we're not going to highlight it at this time.

MJ: Do you have any other remedy that you would desire?

DC: There's no other remedy that would be effective other than a mistrial, but that's not an option.

MJ: Well, you're not getting a mistrial so is there anything else you want?

DC: Nothing else we can ask for.

MJ: Then I'll be glad to give a limiting instruction.

DC: No, sir.

MJ: Do you desire to voir dire any of the members?

DC: No, sir.

MJ: Anything else we need to take up?

TC: No, sir.

MJ: Staff Sergeant Perez, let's call the members in.

The Article 39(a) session terminated.

Record at 341–43.

At trial the defense has the initial burden of raising the issue of unlawful command influence (UCI). *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A.1994). The threshold test for raising UCI, a showing of "some evidence," is low. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F.1999). While the threshold test is low, it requires more than a speculative allegation of UCI. *Id.*

In this case that test was not met. The only undisputed fact in this case, in issue, is that the officer who convened the court-martial was present in the courtroom during closing arguments of counsel on findings. Record at 341. We believe the military judge correctly concluded that this alone was not enough to raise UCI at trial.

Trial defense counsel's motion for a mistrial amounted to nothing more than an unsupported allegation of UCI. When subjected to scrutiny, it is easy to see the allegation is dependent on speculation, buttressed by further speculation. First, it was mere speculation to conclude that all or any of the members saw Major Loughlin in the courtroom. Second, it is further speculation to assume that even if seen, all or any of the members recognized him as the officer who convened the case. Third, it was also speculative for trial defense counsel to assume that Major Loughlin's presence had unfairly influenced any of the members in their deliberations.

Our colleague's dissent on this matter highlights the statement of trial defense counsel, as an officer of the court, that during closing argument the panel was "looking over our shoulder." We merely note that trial defense counsel never stated he observed who or what the members might have been looking at. Rather, trial defense counsel made the assumption that the members were

looking at Major Loughlin.[2] Again, while we do not doubt the trial defense counsel, without more, any suggestion that the members were focused on Major Loughlin is just that, a suggestion, assumption or speculation without deeper meaning and not supported by the record.

While the military judge wisely offered the trial defense counsel the opportunity to voir dire the members and develop sufficient evidence to raise the UCI issue at trial, trial defense counsel declined. Record at 343. At that stage, absent meeting the initial threshold test to raise UCI at trial, the requirement of further investigation under *United States v. Rosser*, 6 M.J. 267 (C.M.A.1979), did not apply.

*Rosser* is distinguished on its facts from our case in that the convening authority's actions in *Rosser* were described as "patent meddling in the proceedings" and his presence throughout the proceedings was described as "ubiquitous." *Id.* at 271–72. Here, the only undisputed fact in issue is that the officer who convened the court-martial was present in the courtroom during closing arguments. Record at 341. Though *Rosser* was decided before the test for raising UCI at trial had been articulated in *Biagase*, the facts in *Rosser* would clearly meet that test. *Rosser*, 6 M.J. at 269–70.

Here the appellant did not meet the initial burden of raising the UCI issue at trial. Further inquiry on the matter is, therefore, unwarranted.

### Argument of Trial Counsel

■ In her second assignment of error, the appellant asserts the trial counsel committed plain error during his opening statement, argument on findings, and argument on sentencing. The appellant contends trial counsel's statements were plain error because they misstated the evidence; attempted to infer guilt by characterizing the appellant as "reckless;" and, made reference to a command-wide drug problem and the Navy's policy toward drug abuse. Appellant's Brief of 26 Jun 2002 at 7–11. There being no

---

**2.** We encourage military judges to inquire into such matters and make appropriate findings of fact and opinions.

evidence that any of the purportedly improper comments materially prejudiced a substantial right of the appellant, we do not find plain error.

At trial no objection was made to trial counsel's remarks. As our superior court has noted, " 'the lack of defense objection is relevant to a determination of prejudice' because the lack of a defense objection 'is some measure of the minimal impact of a prosecutor's improper comment.' " *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F.2001)(quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F.1999)). Thus, with no objection at trial, the appellant is entitled to no relief under this assignment of error absent a finding of plain error. *United States v. Barraza-martinez*, 58 M.J. 173, 175 (C.A.A.F.2003); *United States v. Carpenter*, 51 M.J. 393, 396 (C.A.A.F.1999).

The appellant has the initial burden of persuasion under the plain error analysis and must make a showing of error that was plain or obvious and materially prejudicial to a substantial right. *Carpenter*, 51 M.J. at 396 (citing *United States v. Powell*, 49 M.J. 460, 464–65 (C.A.A.F.1998)). Here the appellant fails.

There is nothing in the record to show the members were misled by statements made by trial counsel and the appellant offers nothing specific to support a showing of material prejudice to any of her substantial rights. Finding no material prejudice to the substantial rights of the appellant, this assignment of error is without merit.

### Uncharged Misconduct

■ In her third assignment of error, the appellant asserts the trial counsel committed plain error by presenting evidence of uncharged misconduct to prove character and to show action in conformity therewith. The appellant complains that this evidence consisted of references to the appellant's prior drug use, pre-service drug use, failure to disclose her pre-service drug use, appellant's attempts to hide her drug use, and possession of drug paraphernalia. Appellant's Brief at 14. No objection was raised at trial.

Here, as with the previous assignment of error, the appellant is entitled to no relief absent a finding of plain error. *Gilley*, 56 M.J. at 122; *see also* MIL. R. EVID. 103(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). We do not find plain error on this record. The appellant has failed to show that any of this incidental testimony was used against her as substantive evidence of guilt. Failing in this, we are convinced that there was no material prejudice to the substantial rights of the appellant and that this assignment of error is without merit. *Powell*, 49 M.J. at 464.

### Evidentiary Ruling and Legal Sufficiency

In support of her fourth assignment of error, the appellant alleges that the military judge erred by admitting two pieces of a straw and the accompanying chain-of-custody document into evidence because there were breaks in the chain-of-custody. She argues that without the two pieces of straw evidence, "no reasonable jury could convict appellant of the offenses relating to possession of methamphetamine." Appellant's Brief at 18. We disagree and, as with the previous two assignments of error, conclude the appellant is entitled to no relief absent plain error. *Gilley*, 56 M.J. at 122 (citing *Powell*, 49 M.J. at 462–64; *see also* MIL. R. EVID. 103(a)).

■ We find no evidence to suggest that the military judge abused his discretion by admitting the two straws into evidence. The appellant did not object to their admission at trial and on appeal, she has offered no evidence that the straws were mishandled or altered. Without this the issue becomes one involving the weight to be afforded the evidence and not its admissibility. *United States v. Harris*, 55 M.J. 433, 440 (C.A.A.F.2001)(citing *United States v. Maxwell*, 38 M.J. 148, 150–152 (C.M.A.1993)). In any event, to establish chain-of-custody the Government must show a reasonable probability the sample that was tested was in fact from the purported source and not altered. The proponent is not required to prove a negative. Gaps in the chain-of-custody go to weight of the evidence and not to its admissibility. *Id.* Again, the appellant has not met her burden and we do not find plain error on this record. The assignment of error is without merit.

## Motion for Findings of Not Guilty

■ The appellant's fifth assignment of error alleges that the military judge erred in denying the defense motion for findings of not guilty to Specifications 2 and 3 of Charge IV, communicating threats, or, alternatively, that the evidence was insufficient for the members' findings of guilty.

The appellant contends that the facts are insufficient to support the findings of guilty because Lance Corporal Bennett, the only witness who heard the alleged threats, did not think that the appellant intended to kill or harm anyone; and, as to the second threat, Lance Corporal Bennett merely overheard a statement made to others. Appellant's Brief at 19.

At trial Lance Corporal Bennett testified as follows in response to trial counsel's questions regarding the appellant's threats:

Q: Did Harvey make any threatening comments about Brunet?

A: Yes, sir. At one time—well, she said a couple of times—

Q: Okay. Well describe the first time.

A: Well, it's the same statement. She just said, "I'll kill the sewer rat."

. . . .

Q: And who was she referring to?

A: Lance Corporal Brunet, sir.

. . . .

A: One of the Marines who was also named in the investigation. I overheard them [the other Marine under investigation and appellant] talking in her room and he [the other Marine] said that after this investigation was all over that Lance Corporal Brunet and Corporal Sheets was going to pay. And Corporal Sheets was Lance Corporal Brunet's boyfriend.

. . . .

Q: What did Harvey say about that?

A: I heard her say "don't worry about Brunet, I'll take care of that[.]"

Q: Now when she was saying this, what was her demeanor like? Was she joking? Was she angry? What?

A: She was angry. I mean, she was being investigated for drugs but—and I

wasn't in there at that time. I just overheard it through the walls.

Record at 189–90. After the Government completed its case in rebuttal, the defense moved for findings of not guilty on the two threats in issue. Record at 310.

Under R.C.M. 917(a), "[t]he military judge ... shall enter a finding of not guilty ... if the evidence is insufficient to sustain a conviction of the offense affected." R.C.M. 917(d) provides the standard and states, "[a] motion for a finding of not guilty shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged. The evidence shall be viewed in the light most favorable to the prosecution, without an evaluation of the credibility of witnesses."

In support of the motion, trial defense counsel argued the Government did not present sufficient evidence to show the appellant was referring to the subject of the threat, Lance Corporal Brunet, and that the second threat in issue was merely overheard by the witness and therefore, not communicated to the witness. Record at 312–13. Trial counsel contended that the witness testified that the appellant was specifically referring to Lance Corporal Brunet. *Id.* at 312. The military judge took the motion under advisement, without hearing from the trial counsel on the second point made in support of the motion by trial defense counsel, and denied the motion at a later Article 39(a), UCMJ, session. *Id.* at 313, 315.

We find that the testimony of Lance Corporal Bennett, when viewed in the light most favorable to the prosecution, without an evaluation of the credibility of witnesses, provides some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged and hold that the military judge did not err in denying the motion.

■ Concerning the appellant's alternative argument that the evidence was insufficient for the members' findings of guilty, we have reviewed the evidence for both legal and

factual sufficiency. The test for legal sufficiency requires this court to review the evidence in the light most favorable to the Government. In doing so, if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, the evidence is legally sufficient. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. Reasonable doubt, however, does not mean the evidence must be free from conflict. *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R.1986).

To support the convictions for communicating threats, we must find the evidence on record to be both legally and factually sufficient on the following elements:

(1) That, in or around Yuma, Arizona, on or about 24 February 1998, the appellant communicated certain language, "I'll kill the sewer rat," for Specification 2 of Charge IV; and on or about 28 February 1998, the appellant communicated certain language, "Don't worry about Brunet, I'll take care of her," for Specification 3 of Charge IV, expressing a present determination or intent to wrongfully injure the person of another presently or in the future;

(2) That the communication was made known to Lance Corporal Bennett;

(3) That the communication was wrongful; and

(4) That, under the circumstances, the conduct of the appellant was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

After a thorough review of the evidence of record, and application of these tests, we find that the evidence is both legally and factually sufficient. We conclude that a rational trier

of fact could find the uncontroverted testimony of Lance Corporal Bennett to support, beyond a reasonable doubt, each element of these offenses. We, too, are convinced of the appellant's guilt, beyond a reasonable doubt. As such, we decline to grant relief.

### Conclusion

We have considered the remaining assignments of error and find them to be lacking in merit. Accordingly, the findings and the sentence, as approved by the convening authority, are affirmed.

Judge HARRIS concurs.

PRICE, Senior Judge (concurring in part and dissenting in part):

I concur with my colleagues' analysis of all but one of the assignments of error. As to the first assignment of error alleging unlawful command influence, I conclude that the issue was raised at trial but that the record does not contain an adequate factual basis for appellate disposition. Accordingly, I would order a limited hearing in accordance with *United States v. DuBay,* 37 C.M.R. 411, 1967 WL 4276 (C.M.A.1967) to obtain necessary findings of fact.

As the majority opinion points out, it is undisputed that Major Loughlin, the officer who convened this court-martial, selected the members, and was executive officer of the appellant's squadron at the time of trial, was in the courtroom during arguments on findings. Of the four members who heard this case, the president, Captain Cisneros, was the only member who was part of Major Loughlin's squadron.[3] During voir dire, Captain Cisneros acknowledged that she knew Major Loughlin. The other members stated they did not know Major Loughlin.

The trial defense counsel moved for a mistrial based not merely on Major Loughlin's presence in the gallery, but because the members were "looking over our shoulder" at Major Loughlin during the closing argument.

3. Captain Cisneros' voir dire revealed that her fitness report was written by a Major Kapps and reviewed by a Colonel Turner. Record at 54–55.

While the military judge said that he didn't see that, he did not explain what he meant.[4]

The majority dismisses the trial defense counsel's argument as mere speculation. I view it differently. When an officer of the court tells the military judge that he has seen something in the courtroom, I consider that something more than mere speculation. *See* Judge Advocate General Instruction 5803.1B, Rule 3.3e(1), Comment (Candor and Obligations Toward the Tribunal)(11 Feb 2000)("[A]n assertion purporting to be of the covered attorney's own knowledge, as in an affidavit by the covered attorney or in a statement in open court, may properly be made only when the covered attorney knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry."). When an attorney tells a trial judge that he saw something in open court, absent credible and persuasive evidence to the contrary, it should be presumed that the assertion is true.

It is not necessary to cite the many cases documenting litigation of unlawful command influence to establish the fact that most incidents of such influence occur *outside* the courtroom. Here we have an allegation of such influence *inside* the courtroom. The military judge thought enough of Major Loughlin's presence to *sua sponte* make it a matter of record. The trial defense counsel was concerned enough to move for a mistrial, a drastic remedy available only for extraordinary developments in a criminal trial. Based on the foregoing, I conclude that the issue of unlawful command influence was raised.

Unfortunately, once raised, neither the trial defense counsel nor the military judge tried to get to the bottom of the factual issues inherent in this specter of unlawful command influence in the courtroom. The trial defense counsel's reluctance to have the military judge highlight, by limiting instruction, the convening authority's presence is understandable, but a motion for a mistrial should not be idly made without a willingness to develop supporting facts. When the trial defense counsel failed to present any evidence in support of the motion, the military

judge had a duty to, at a minimum, call in Captain Cisneros for individual voir dire to determine whether she saw Major Loughlin, whether he said or did anything, and whether she was influenced by his presence in the courtroom. *See United States v. Rosser*, 6 M.J. 267 (C.M.A.1979).

The *Rosser* case is instructive on the duty of a military judge when the issue of unlawful command influence is raised in the courtroom or the immediate vicinity of the courtroom. In that case, Captain Leibhart, the appellant's company commander and accuser, spoke to a member in a waiting room adjacent to the courtroom. In the same waiting room, and in the presence of both Government and defense witnesses, he also eavesdropped on the trial and looked through a window into the courtroom. Several witnesses approached him to complain of their fear of bodily harm as a result of their anticipated testimony. Captain Leibhart told them to have the intestinal fortitude to stand up and say what happened. It should be noted that he was also the company commander of several of the Government and defense witnesses.

At some point in the trial, the trial defense counsel made a motion for mistrial based, in part, on these activities and conversations of Captain Leibhart in the waiting room. The military judge then conducted an inquiry that our superior court characterized as "perfunctory" and inadequate. *Id.* at 273. The court also offered the following observations on the duty of a military judge in resolving a motion for mistrial rooted in unlawful command influence:

> Likewise, the military judge must engage in a sufficient inquiry as a matter of law to uncover sufficient facts to decide the issue before him. Since such a motion may raise issues of crucial importance to the integrity of the military justice system, the military judge may not be satisfied with mere perfunctory conclusions in determining whether a military accused is receiving a fair trial. In addition, the application of law to the facts by the military judge must

---

4. We don't know if the military judge was distracted, was focused on counsel, had his eyes

closed, was contradicting defense counsel, or didn't see the members for some other reason.

be reasonable in some objective sense to be upheld by this Court. Finally, a mistrial is a drastic remedy, but equally important in our mind is the affirmative responsibility of the military judge to insure the military accused a fair trial decided by impartial triers of fact and free from unlawful command influence. Moreover, we believe it incumbent on the military judge to act in the spirit of the Code by avoiding even the appearance of evil in his courtroom and by establishing the confidence of the general public in the fairness of the court-martial proceedings. The failure of the military judge to meet such responsibilities may under particular facts and circumstances be found to constitute an abuse of his judicial discretion.

*Id.* at 271, (internal footnote omitted). While I do not believe that this sweeping language places the burden of producing evidence solely on the military judge, I conclude that under the facts and circumstances of the case at bar, it was incumbent for the military judge to do more than he did. Given the seriousness of unlawful command influence in our system of military justice, where facts indicate that such influence might have occurred under the very nose of the military judge in his courtroom, if counsel do not request that members be questioned and/or witnesses be called, the military judge should do so *sua sponte.*

I would order a *DuBay* hearing to answer the following questions:

1. What, if anything, did Major Loughlin do or say while he was sitting in the courtroom (including, but not limited to, facial expressions and body language)?

2. Did any of the members see Major Loughlin in the courtroom?

3. Did any of the members recognize Major Loughlin?

4. Did any of the members realize he was the officer who convened the court-martial?

5. Was any member distracted from the closing arguments because of the presence of Major Loughlin?

6. Was Captain Cisneros "intimately familiar" with Major Loughlin, as argued by the defense counsel? Record at 342. If so, what was the nature of their relationship?

7. In view of the defense counsel's argument that the convening authority "heard all the evidence," was Major Loughlin present in the courtroom during other portions of the trial? *Id.* If so, what, if anything, did he do and say while in the courtroom?

8. Was Major Loughlin's presence in the courtroom mentioned during deliberations? *See* RULE FOR COURTS-MARTIAL 923, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.)

Finally, I offer an observation and caution. This case indirectly presents the issue of whether the convening authority (and, by extension, his staff judge advocate) may properly attend a trial by court-martial, particularly when the forum is trial by members. *See* R.C.M. 806. However, that specific issue has not been briefed, and nothing in this opinion should be construed as addressing or resolving that issue.