# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40294**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Israel E. FLORES**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 April 2023

————————————

*Military Judge:* Pilar G. Wennrich.

*Sentence:* Sentence adjudged on 7 March 2022 by GCM convened at Joint Base Charleston, South Carolina. Sentence entered by military judge on 9 April 2022: Bad-conduct discharge, confinement for 12 months, total forfeiture of pay and allowances for 12 months, and reduction to E-1.

*For Appellant:* Major Heather M. Caine, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Judge GRUEN delivered the opinion of the court, in which Chief Judge JOHNSON and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

GRUEN, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of one specification of making a false official statement (Charge I), in violation of Article 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 907, and two specifications of assault consummated by a battery (Charge II), in violation of Article 128, UCMJ, 10 U.S.C. § 928.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 12 months, total forfeiture of pay and allowances for 12 months,[3] and reduction to the grade of E-1.[4]

Appellant has raised two issues: (1) whether trial counsel committed prosecutorial misconduct and (2) whether his sentence is inappropriately severe. We find in the negative for both issues and that there is no error materially prejudicial to a substantial right of Appellant, and we affirm the findings and sentence.

---

[1] All references to the UCMJ and the Rules for Court-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was charged with Article 128, assault consummated by a battery upon a child under the age of 16 years, which is the greater offense of assault consummated by a battery. Pursuant to the plea agreement, he pleaded guilty to the lesser-included offense by excepting the words, "a child under the age of 16 years."

[3] The punishment of total forfeiture of pay and allowances does not normally have a specified termination date. *See* R.C.M. 1003(b)(2); *see also United States v. Stewart*, 62 M.J. 291, 294 (C.A.A.F. 2006) ("We hold that where a sentence to forfeiture of all pay and allowances is adjudged, such sentence shall run until such time as the servicemember is discharged or returns to a duty status, whichever comes first, unless the sentencing authority expressly provides for partial forfeitures post-confinement."). Appellant did not raise this issue as error, and we find no prejudice.

[4] Although not raised by Appellant, we note the convening authority erred by failing to state the reasons why he denied Appellant's request to defer confinement. *See United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018); *see also* R.C.M. 1103(d)(2) (stating decisions on deferment requests are subject to judicial review for abuse of discretion). We further note Appellant did not object to the convening authority's failure to state the reasons for denying the request. *See* R.C.M. 1104(b) (permitting parties to file post-trial motions to address various matters, including errors in post-trial processing). Under the circumstances of this case, we find the omission did not materially prejudice Appellant's substantial rights. *See United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citations omitted).

## I. BACKGROUND

Appellant's convictions for assault consummated by battery arose from striking his girlfriend's two-year-old son, JF, on the face and head with his hand and a spatula. His conviction for making a false official statement is a result of a statement he made to his first sergeant denying he was "even there," insinuating he had no opportunity to commit the crimes for which he was accused.

Appellant enlisted in the United States Air Force on 26 April 2016. At the time of the charged offenses, he was 23 years old and stationed at Joint Base Charleston, South Carolina. Appellant dated EF, an Air Force staff sergeant, from September 2020 until the date of the charged assault offenses—25 November 2020. EF is JF's mother and his designated victim's representative under Article 6b, UCMJ, 10 U.S.C. §806b.

On 25 November 2020, Appellant finished a 12-hour shift at approximately 0600 hours. He went to EF's home to sleep, as he was living with EF at the time. He estimated he had only slept two hours total in the three days preceding 25 November 2020. Appellant agreed to watch JF so that EF could attend a weapons qualification course. EF departed her home for the course at 1100 hours and returned home from the course at approximately 2000 to 2030 hours to find JF with dried feces on his buttocks and genitals, and marks on his face and head. JF appeared to have been crying because his face and eyes were red and puffy and his clothes were wet with tears. EF confronted Appellant about the marks on JF to which he responded that JF must have fallen in his crib. Upon further questioning by EF, Appellant admitted he slapped JF a couple of times because JF spilled coffee grounds. EF called DA, a friend and an emergency medical technician, seeking advice about her son. DA recommended EF watch JF for any behavioral changes or swelling and he asked to speak to Appellant. Appellant admitted in that phone conversation that he "popped [JF] a couple of times." After the phone conversation with DA, Appellant packed a bag and left EF's house.

After Appellant left EF's house on 25 November 2020, EF bathed her son, at which time she noticed a mark and swelling on the back of his head. This prompted EF to call DA for more advice. DA told her to take JF to the emergency room, which she did. While en route to the hospital, EF notified the local sheriff's office and her military leadership about the situation. Sheriff's officers sought assistance from Appellant's first sergeant, SMSgt OM, requesting Appellant speak with them either at Appellant's location or the hospital to which they had responded with regard to EF's earlier phone call. Appellant declined, claiming he was too intoxicated to drive or make a statement. On 26 November 2020, the local sheriff's office turned the case over to the Air Force Office of Special Investigations (AFOSI). While on duty and acting in his first sergeant

3

capacity, SMSgt OM escorted Appellant to AFOSI to be interviewed and waited for him outside AFOSI offices. Upon finishing his interview with AFOSI agents, Appellant spontaneously remarked to SMSgt OM, *inter alia*, "I wasn't even there," which was the statement that formed the basis of the false official statement charge.

On 1 December 2020, Appellant was interviewed by CS, a case worker for the South Carolina Department of Social Services (DSS). In that interview, Appellant denied all allegations he assaulted JF. He denied knowing who was watching JF on 25 November 2020 and claimed he was at two different friends' homes on that day—both of whom denied seeing Appellant at any time that day. Additionally, a neighbor's security camera video captured Appellant's car at EF's home at 0730, 1620, and 2020 hours on 25 November 2020. On 16 December 2020, Appellant filed a petition for a restraining order against EF claiming "alleged false allegations against [him] in that [he] physically harmed [JF, allegations] to which [he] den[ied] adamantly." Appellant's petition was denied and no restraining order was issued.

On 20 October 2021, charges for assault consummated by a battery upon a child and making a false official statement were referred to a general court-martial. On 25 February 2022, Appellant entered into a plea agreement whereby he agreed to plead guilty to Charge I and the lesser-included offenses of Charge II by excepting the charged words "a child under the age of 16 years." In exchange for Appellant's guilty plea, the convening authority agreed, *inter alia*, to require the military judge to enter a sentence within a mandated minimum and maximum punishment range with any sentences of confinement to run concurrently. Additionally, a punitive discharge was required but the military judge could not adjudge a fine. The confinement range for Charge I and its sole specification was six months to three years. The confinement range for each specification of Charge II was zero days to six months. Other than those listed above, there were no other limitations on the punishments which could be imposed. As such, the maximum permissible punishment based solely on Appellant's guilty plea was a dishonorable discharge, three years' confinement, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

## II. DISCUSSION

### A. Prosecutorial Misconduct

Appellant claims trial counsel committed prosecutorial misconduct through improper argument by "impermissibly invit[ing] the military judge to punish [Appellant] more severely because of uncharged misconduct." Trial defense counsel did not object to trial counsel's arguments. Therefore, we review for plain error. We find no relief is warranted.

**1. Law**

"Trial prosecutorial misconduct is behavior by the prosecuting attorney that 'oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88).

We review claims of prosecutorial misconduct and improper argument de novo. *See United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). "When a party does not object to comments by the prosecutor during voir dire, opening statement, argument on the findings, or argument on the sentence, we review for plain error." *United States v. Palacios Cueto*, 82 M.J. 323, 333 (C.A.A.F. 2022) (citations omitted).

> Plain error occurs when (1) there is error, (2) the error is clear or obvious, and (3) the error results in material prejudice to a substantial right of the accused. Thus, we must determine: (1) whether trial counsel's arguments amounted to clear, obvious error; and (2) if so, whether there was a reasonable probability that, but for the error, the outcome of the proceeding would have been different.

*Voorhees*, 79 M.J. at 9 (internal quotation marks and citations omitted). "[T]he best approach for assessing the prejudice from prosecutorial misconduct 'involves a balancing of three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.'" *Palacios Cueto*, 82 M.J. at 334 (quoting *Fletcher*, 62 M.J. at 184). The burden to establish plain error, including prejudice, is on the appellant. *Id.* "[T]he lack of a defense objection is 'some measure of the minimal impact of a prosecutor's improper comment.'" *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

In presenting argument, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citation omitted). Trial counsel may strike hard but fair blows, but may not "inject his personal opinion into the panel's deliberations, inflame the members' passions or prejudices, or ask them to convict the accused on the basis of criminal predisposition." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citations omitted). In

determining whether trial counsel's comments were fair, we examine them in the context in which they were made. *Gilley*, 56 M.J. at 121. We do not "'surgically carve' out a portion of the argument with no regard to its context." *Baer*, 53 M.J. at 238.

When analyzing allegations of improper sentencing argument in a judge-alone forum, we presume a "military judge is able to distinguish between proper and improper sentencing arguments." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007)). Three factors "guide our determination of the prejudicial effect of improper argument: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s].'" *Sewell*, 76 M.J. at 18 (alteration in original) (quoting *Fletcher*, 62 M.J. at 184). "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone." *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (alteration, internal quotation marks, and citation omitted).

### 2. Analysis

Because there was no objection during trial counsel's argument, we analyze this issue under a plain error standard of review. In this case, trial counsel argued, *inter alia*, that Appellant should receive three years' confinement and a dishonorable discharge because "Air Force members need to know that you cannot compound your mistakes with dishonesty after dishonesty, and this demands harsh punishment." The crux of Appellant's complaint relies on the fact that trial counsel argued additional untruthful statements which Appellant made after his false official statement to SMSgt OM—that "he wasn't even there." Appellant stipulated to and also discussed these additional untruthful statements which were uncharged misconduct, in his guilty-plea inquiry because such facts directly related to his crimes. Trial counsel used those facts in making his sentencing argument regarding rehabilitative potential and matters in aggravation. These statements were a part of a continuous course of conduct involving the same or similar crimes and thus, are evidence in aggravation and can be argued by trial counsel as such. There was no objection to trial counsel's argument and no rebuttal to these points.

Military courts have recognized the principle that uncharged misconduct which is part of "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community" may be admitted as evidence in aggravation, because such evidence is directly related to the conduct which resulted in conviction. *United States v. Mullens*, 29 M.J. 398, 400 (C.M.A. 1990). In *Mullens*, the accused had been charged with sexually abusing his children on numerous occasions between 1983 and 1986;

the stipulation of fact in that case discussed "uncharged identical acts with the same children" between 1979 and 1983 at a different duty station. *Id.* at 399. Similarly, in *United States v. Nourse*, 55 M.J. 229 (C.A.A.F. 2001), the United States Court of Appeals for the Armed Forces (CAAF) upheld the admission of other conduct in a case involving the larceny of ponchos from a sheriff's office. Although the accused in *Nourse* was charged with and convicted of a single larceny of property worth $2,256.00, the Government introduced evidence of other larcenies of property valued at $30,000.00 from the same office and that the accused had sold items to a military surplus store around the same time. *Id.* at 230. In concluding the military judge had not abused his discretion in admitting the evidence, the CAAF explained it pertained to "the same crime upon the same victim in the same place" and was "admissible to show the full impact of [the accused's] crimes upon the [s]heriff's [o]ffice." *Id.* at 232.

Appellant admitted during his guilty plea that he concocted the lie to SMSgt OM because he "fear[ed the] . . . repercussions." The fact Appellant repeated the same falsehood to other individuals, even though those individuals were not acting in an official military capacity, in order to deflect responsibility for the same misconduct was a relevant fact in aggravation that the judge could properly consider in rendering a sentence. *See, e.g.*, *United States v. Beehler*, No. ACM 39964, 2022 CCA LEXIS 84, at *6 (A.F. Ct. Crim. App. 10 Feb. 2022) (unpub. op.) (finding "the evidence of uncharged misconduct was closely related in time, type, and outcome" of charged criminal acts and, therefore, proper evidence of aggravation). This uncharged misconduct was part of a continuous course of conduct involving the same or similar crimes—lies told in an attempt to avoid culpability for abusing JF, and thus appropriate facts for trial counsel's argument.

While we find there is no clear or obvious error, we also find that Appellant cannot establish material prejudice as he has not "show[n] a reasonable probability that, but for [trial counsel's argument], the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 U.S. 189, 194 (2016) (internal quotation marks and citation omitted).

In testing for material prejudice, the first *Fletcher* factor considers the severity of the misconduct. 62 M.J. at 184. On this matter, we note that "the lack of a defense objection is some measure of the minimal impact of a prosecutor's improper comment." *Gilley*, 56 M.J. at 123 (internal quotation marks and citation omitted). We also note that in a military judge alone case, this court presumes that the military judge would disregard any improper comments by counsel during argument and such comments would have no effect on determining an appropriate sentence. *See Erickson,* 65 M.J. at 224–25. In this case, trial counsel did not offer personal opinions or conjecture when arguing the uncharged lies, but relied on Appellant's admissions and stipulated facts,

which trial counsel directly related to Appellant's rehabilitative potential and which properly go to matters in aggravation in the context with which such facts were argued.

Regarding the second *Fletcher* factor—curative measures taken—no curative instruction was necessary because of the judge-alone forum. We note that military judges are presumed to know and follow the law, absent clear evidence to the contrary. *See United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (per curiam); *see also Erickson*, 65 M.J. at 225 (noting the presumption that a military judge is able to distinguish between proper and improper sentencing arguments). Appellant has presented no evidence that the military judge in this case was unable to distinguish between proper and improper sentencing argument.

As to the third *Fletcher* factor—the weight of the evidence supporting the sentence—we find this factor weighs heavily in the Government's favor. The evidence in this case was strong and uncontested, as it came from Appellant's own admissions to the military judge during his guilty plea inquiry and the stipulation of fact. In accordance with the plea agreement, for the charge of false official statement, Appellant faced a maximum punishment that could have included a dishonorable discharge and three years of confinement. The adjudged sentence for all charges, which included a bad-conduct discharge and 12 months of confinement, fell far short of Appellant's maximum exposure. We find the facts and circumstances provide substantial justification to support the sentence, irrespective of trial counsel's comments. We conclude that the weight of the evidence supports the adjudged sentence.

In conclusion, we find that Appellant has failed to meet his burden to demonstrate that any error resulted in material prejudice to a substantial right. After considering trial counsel's comments as a whole, we are confident that Appellant was sentenced based on the evidence alone. *See Halpin*, 71 M.J. at 480.

## B. Sentence Appropriateness

Appellant argues that "[t]welve months of confinement for a single false official statement is not appropriate." We again find no relief is warranted.

### 1. Law

We review issues of sentence appropriateness de novo. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). Our authority to review a case for sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to, considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the

sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

**2. Analysis**

The maximum punishment Appellant could have received for the crimes with which he was convicted was a dishonorable discharge, three years' confinement, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. The plea agreement stated the minimum and maximum punishments for each charge and specification. For the false official statrement, the minimum punishment was six months' confinement and a bad conduct discharge, while the maximum punishment was three years' confinement and a dishonorable discharge. The military judge sentenced Appellant to a bad-conduct discharge, confinement for 12 months, total forfeiture of pay and allowances for 12 months, and reduction to the grade of E-1.

Appellant argues the sentence imposed by the military judge was inappropriately severe because "[a]t the time of the false official statement, [he] was suffering from adjustment disorder mixed with anxiety and depressed mood." Moreover, he "demonstrated significant rehabilitation potential" as evidenced by the statements of those who interacted with Appellant regularly and specifically, every day on deployment. One such individual described Appellant as someone who could "[m]ost definitely" bounce back in the future. While we agree there were mitigating circumstances and evidence of rehabilitative potential, we do not agree that Appellant's adjudged sentence was inappropriately severe.

The circumstances surrounding the assault consummated by a battery and underlying the false official statement are aggravating. Appellant was reluctant to admit that he struck JF on the head and face because JF had spilled coffee grounds. The fact JF was a helpless two-year-old child who could not express for himself what he had endured compounds Appellant's actions. Then, in light of the anguish JF was exhibiting, Appellant chose to minimize the assault—leaving EF to rely on a friend's advice instead of arming her with a full, accurate, and timely disclosure of the events so that she could decipher JF's symptoms and make well-informed medical decisions for her toddler as quickly as possible. When Appellant told SMSgt OM, that he "wasn't even there," he continued to attempt to escape responsibility for his actions. It was proper to

consider the totality of the circumstances and Appellant's rehabilitation potential in determining an appropriate sentence for the false official statement. and an appropriate sentence for crimes of which Appellant was convicted.

We have conducted a thorough review of Appellant's entire court-martial record, including Appellant himself, the nature and seriousness of the offenses, Appellant's record of service, and all matters contained in the record of trial. We conclude that the nature and seriousness of the offenses support the adjudged sentence. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, we conclude that the sentence is not inappropriately severe, and we affirm the sentence adjudged and as entered by the military judge.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court