# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39734**

_____

**UNITED STATES**
*Appellee*

**v.**

**Danber S. ALBARDA**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 22 February 2021

_____

*Military Judge:* W. Shane Cohen.

*Approved sentence:* Dishonorable discharge, confinement for 6 years, and reduction to E-1. Sentence adjudged on 8 March 2019 by GCM convened at Fort George G. Meade, Maryland.

*For Appellant:* Major Rodrigo M. Caruço, USAF; Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

ANNEXSTAD, Judge:

Contrary to his pleas, Appellant was convicted by a general court-martial composed of officer and enlisted members of one charge and three specifications of assault consummated by a battery with force likely to produce death or grievous bodily harm upon a child under the age of 16 years, and one charge and specification of endangering the health of the same child, in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934.[1,2] Appellant was sentenced to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority disapproved the part of the sentence extending to the adjudged forfeitures, but approved the remainder of the adjudged sentence.[3]

On appeal, Appellant raises 15 issues before this court: (1) whether trial counsel committed prosecutorial misconduct during his sentencing argument by improperly implying that Appellant would reoffend and by urging the panel not to consider evidence that Appellant introduced as mitigation; (2) whether the military judge erred in failing to take curative measures after trial counsel's sentencing argument; (3) whether Appellant received a fair sentencing hearing; (4) whether Appellant had equal access to evidence; (5) whether trial counsel committed prosecutorial misconduct by failing to advise a potential witness to meet with Appellant's trial defense counsel; (6) whether the military judge erred in admitting Appellant's confession; (7) whether Appellant was denied the effective assistance of counsel under the Sixth Amendment[4] due to trial defense counsel's failure to object to the Government withdrawing a potential witness as a witness, failure to object to a government sentencing exhibit, and failure to object to trial counsel's allegedly overzealous argument; (8) whether the military judge erred by not recognizing two defense character letters as expert testimony; (9) whether Appellant's sentence was inappropriately severe; (10) whether trial counsel committed prosecutorial

---

[1] References to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The members found Appellant guilty of Charge II and its Specification excepting the words "on divers occasions," and not guilty of the excepted words. The members also specified "left leg/femur" with respect to the single injury for which they believed Appellant failed to obtain proper medical care.

[3] The convening authority deferred the adjudged reduction in grade and all adjudged and mandatory forfeitures of pay and allowances from 25 March 2019 until action. The convening authority also waived all of the mandatory forfeitures for a period of six months or release from confinement, whichever was sooner, with the waiver commencing on 3 July 2019. The total pay and allowances were directed to be paid to Appellant's spouse.

[4] U.S. CONST. amend. VI.

misconduct during his sentencing argument by improperly inflaming the passions of the panel; (11) whether the military judge erred in denying Appellant's motion to appoint a forensic pathologist; (12) whether the military judge was impartial towards Appellant; (13) whether Appellant's conviction of Specification 2 of Charge I, assault consummated by a battery, is legally and factually sufficient; (14) whether Appellant was subjected to illegal pretrial punishment; and (15) whether the accumulation of assigned errors deprived Appellant of a fair trial and sentencing proceeding.[5] We also consider two additional issues: (16) whether Appellant is entitled to relief for a violation of the 18-month standard for appellate review established in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006); and (17) whether the action and general court-martial order (CMO) were properly prepared.

With respect to issues (2) through (8) and (11) through (15), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As discussed below, we also find no relief is warranted for issues (1), (9), (10) and (16), but find, as to issue (17), that a corrected convening authority's action and CMO are required. Finding no other error, we affirm, but return the record of trial to The Judge Advocate General for remand to the convening authority to withdraw the incomplete action and substitute a corrected action and court-martial order.

# I. BACKGROUND

Appellant was convicted of physically abusing his nine-month-old biological daughter, NA. The abuse was first discovered in April 2018 by Dr. EH, a clinical assistant professor at the University of Maryland and an attending physician in the University of Maryland pediatric emergency room. Dr. EH had significant experience treating child abuse cases and was board certified in pediatrics, pediatric emergency medicine, and medical toxicology. In April 2018, NA was transferred to the University of Maryland pediatric emergency department from an outside hospital facility with a femur fracture in her left leg. Dr. EH was working in the emergency room when NA was brought in by Appellant and his wife. Dr. EH served as the attending physician in the emergency department for the majority of NA's treatment in the emergency department. Dr. EH initially spoke with the family to determine what happened. NA's family, including Appellant, had no response for how NA sustained her injury. After assessing NA and learning that her family could

---

[5] Issues (4) through (15) were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Since issues (1) and (10) require the same analysis, we consider them together.

not provide an innocent explanation for NA's injuries, Dr. EH suspected child abuse and determined that more care was needed than just care for the femur fracture. Because of her suspicions of child abuse, Dr. EH requested that NA receive a computed tomography (CT) scan of her head to determine whether there was any evidence of bleeding on the brain that could be the result of shaken baby syndrome. Dr. EH also had a skeletal survey performed to determine if there was any evidence of any additional fractures or healing fractures. As a result of the skeletal survey, Dr. EH was able to determine that NA had also suffered a tibia fracture of her right leg, which appeared to be older than the femur fracture in her left leg. A radiologist also reviewed the skeletal scan and noted a concern about a possible left posterior rib fracture. The treatment team determined that no treatment was needed for the right tibia fracture or possible rib fracture. NA's left leg was placed in a cast. As a mandatory reporter, Dr. EH reported her suspicions of child abuse to local police and child protective services (CPS).

The investigation was ultimately forwarded to the Air Force Office of Special Investigations (AFOSI). At that point, AFOSI had two possible suspects: Appellant and his wife, KA. Since KA was a civilian, AFOSI did not have jurisdiction over her, so the agents contacted the Federal Bureau of Investigation (FBI) to work a joint investigation. Before law enforcement officers were able to interview Appellant and his wife, CPS finished their case determination, and NA and her older brother were placed in foster care. During the case determination with CPS, KA and Appellant were asked to explain the injuries to NA. Appellant did not say anything, and instead began crying and went to the bathroom to vomit.

Subsequently, AFOSI learned that Appellant had scheduled a meeting with the base chaplain, and they coordinated to meet Appellant and KA at the base chapel. Both voluntarily agreed to interview with law enforcement. During the two-hour interview, which was audio recorded, Appellant admitted that he could get "temperamental at times." Appellant also admitted that it would be a "great idea" for him to get help with his anger issues. He also stated that on 17 April 2018, he noticed that NA was fussier than normal and that she was not kicking with both of her legs, which she would normally do. Initially, Appellant claimed that he thought NA had sustained her broken femur because he fell asleep while feeding her. Eventually, Appellant admitted that he had forcefully grabbed his daughter's lower legs. He described that sometimes he would get irritated with her, especially when it was late at night and NA would be kicking at him. He admitted that he would sometimes deliberately squeeze NA's legs and that he started doing this in March 2018. He also admitted that he squeezed his daughter's chest and ribs a couple of times to get her to stop crying. Appellant told law enforcement officers that one of the times he was squeezing NA's legs that she "kind of got into an awkward

position and she kind of fell when I was holding onto it." Appellant further acknowledged on this occasion that he was squeezing NA's left leg, and jerked her up by her leg, to the point where her full body weight was hanging from her leg. He also admitted that he heard a snap "or something." Appellant also confessed that he thought he "felt it crack" and that NA "just started crying" and "wouldn't stop" crying. Finally, Appellant admitted that he did not want to take her to the hospital because he was afraid of his wife finding out what had happened.

Appellant also spoke to his aunt, VS. She testified that Appellant told her in April 2018, while he was under investigation for the injuries to NA, that NA had sustained the broken femur when he held her leg down and she fell, and that when she fell he picked her up and squeezed her.

At trial Lieutenant Colonel (Lt Col) SM, a pediatrician who specialized in child abuse cases, testified as an expert witness for the Government. In her review of the medical documents she noted that NA had an acute spiral fracture of the left femur, a healing fracture of the right tibia, and possible rib fractures—particularly of the sixth and seventh ribs. She also explained that a nine-month-old's bones would be harder to break than an older child, due to the amount of cartilage present. Lt Col SM testified that the injuries to NA's left leg were consistent with Appellant holding her left leg and jerking her up with her full body weight "dangling" by her leg. Lt Col SM also testified that the injuries to NA's right leg and ribs were consistent with squeezing her right leg and torso.

## II. DISCUSSION

### A. Sentencing Argument

Appellant asserts that trial counsel committed prosecutorial misconduct during his sentencing argument. Specifically, Appellant contends that trial counsel's sentencing argument: (1) improperly implied that there was a likelihood that Appellant would reoffend; (2) improperly urged to the panel not to consider evidence that Appellant introduced in mitigation and argued against Appellant's right to make a sentence recommendation; and (3) improperly inflamed the passions of the panel when he said, "How dare he use his family as a shield!" We note at this point, while both briefs reference this quote, that this statement does not appear anywhere in the record. That said, trial counsel did argue during sentencing, "[a]nd you can't break your child's bones and then come in here and use your family as a shield to not get the punishment that you deserve," and we will consider that statement instead.

### 1. Additional Background

During the pre-sentencing phase of Appellant's court-martial, trial counsel introduced Appellant's personal data sheet and enlisted performance reports. The only other evidence admitted by trial counsel was a photo of NA in the hospital. There was no victim unsworn statement submitted under Rule for Courts-Martial (R.C.M.) 1001A on behalf of NA.

Appellant's counsel introduced a documentary sentencing package that included six character letters, an autobiography, a family video, and a series of documents indicating that he had completed parenting and domestic violence classes. The family video consisted of Appellant sitting on a couch with his family, talking about how his biggest concern about going to jail was the impact it was going to have on his family. Appellant also introduced a written unsworn statement.

In addition to the documentary evidence, Appellant's stepfather testified on behalf of Appellant and told the members that a harsh sentence would have a negative impact on Appellant's family, saying that, "not only would the punishment be for [Appellant], the punishment would be more [for] KA and the children. . . . to leave [KA] and the kids without their dad . . . would be the worst punishment that could occur to them." KA also testified and discussed the positive changes she witnessed in her husband during the pendency of his trial. During his oral unsworn statement, Appellant told the panel "I do not want to go to jail" and that jail "would be more of a punishment toward my family." The military judge then provided instructions and specifically advised the members that "the [Appellant] is allowed to make a specific recommendation with respect to any particular sentence" and that it was "solely" up to the members to determine an appropriate sentence.

Trial counsel then provided argument, during which trial defense counsel did not object. Trial defense counsel then argued. Each counsel was permitted one argument with no rebuttal. Following argument by both counsel, the military judge issued his final sentencing instructions to the members. The military judge specifically instructed the members that the arguments of trial counsel and the trial counsel's recommendations are only individual "suggestions and may not be considered as the recommendation or opinion of anyone other than such counsel." He reminded members that Appellant may make a personal request in relation to specific punishments. Finally, the military judge advised the members that defense counsel was speaking on behalf of Appellant. Following the final instructions the military judge asked if there were any objections to the instructions. Trial defense counsel responded, "No objection." Trial defense counsel did not raise any issues of improper argument or prosecutorial misconduct in Appellant's clemency submission of 2 July 2019 to the convening authority.

Appellant's brief to this court highlights portions of trial counsel's sentencing argument that he contends were improper and proof of prosecutorial misconduct. Appellant contends the following passages in the argument were improper because they suggested the possibility of Appellant reoffending:

> But five years [of confinement] is a minimum amount necessary. And why is that? Because what if this happens again? What if those anger issues are not really those old anger issues [and] rear their ugly head late at night?

> In five years, [NA] will be almost 7. She'll be able to communicate. She'll be able to talk to teachers, to social workers. She'll be able to understand what's going on around her. She'll be sleeping through the night. Five years she can communicate what is happening to her. Because if this happens again, who's going to speak for [NA]? [Appellant] didn't do it. If he gets off light today, he's not going to have an incentive to come forward.

> . . .

> But the hard truth is that sometimes it's better to have a father in confinement when that father is abusive, when the father causes the injuries that he caused, it's better to not have a father in that life—in the family's life.

> . . .

> But even if you think that the risk [of him] doing this again is zero, and that's a big if, five years is also an appropriate for—to rehabilitate [Appellant].

> . . .

> That's why five years confinement as a floor is appropriate to make sure that this doesn't happen again. That's part of your job: Protection of society, protection of [NA]. Don't come back with a sentence [that is] less than five years for [NA]'s sake to rehabilitate [Appellant] to protect this from happening again.

Appellant also highlights the following argument by trial counsel, which he argues amounts to trial counsel improperly instructing the panel not to consider any mitigating evidence offered by Appellant.

> But don't forget that when defense counsel comes up here, that they are [Appellant's] mouthpiece and they are going to speak to you on behalf of him. And you need to ask yourselves, in what world is it appropriate that you can commit crimes and then

come in and tell you what sentence you deserve? To do the cost benefit of your own crimes?

Finally, Appellant contends that trial counsel's comment during his sentencing argument concerning Appellant using his family as a shield was improper because its "only purpose" was to "inflame the passions of the panel in order to sentence Appellant on emotion, rather than solely on the evidence before it."

**2. Law**

We review claims of prosecutorial misconduct and improper argument de novo; when no objection is made at trial, the error is forfeited, and we review for plain error. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). Under the plain error standard, such error occurs "when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted).

"Trial prosecutorial misconduct is behavior by the prosecuting attorney that 'oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Id.* at 178 (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88) (additional citation omitted).

In presenting argument, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citation omitted). Trial counsel may strike hard but fair blows, but may not "inject his personal opinion into the panel's deliberations, inflame the members' passions or prejudices, or ask them to convict the accused on the basis of criminal predisposition." *Sewell*, 76 M.J. at 18 (citations omitted). In determining whether trial counsel's comments were fair, we examine them in the context in which they were made. *United States v. Gilley*, 56 M.J. 113, 121 (C.A.A.F. 2001). We do not "surgically carve out a portion of the argument with no regard to its context." *Baer*, 53 M.J. at 238 (internal quotation marks omitted).

Among the principal purposes of sentencing are the protection of society from the wrongdoer and deterrence of the wrongdoer and those who know of his crime and his sentence from committing the same or similar offenses. *United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A. 1989); *see also* R.C.M. 1001(g) ("trial counsel may . . . refer to generally accepted sentencing philosophies,

including rehabilitation of the accused, general deterrence, specific deterrence of the misconduct by the accused, and social rehabilitation"). Both the Government and the defense "may argue for an appropriate sentence." R.C.M. 1001(g).

"Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be confident that [an appellant] was sentenced on the basis of the evidence alone." *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017) (quoting *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (alteration in original) (internal quotations omitted) (citations omitted)). In assessing prejudice from improper argument, we analyze: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction. *See United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (citation omitted); *Fletcher*, 62 M.J. at 184. The United States Court of Appeals for the Armed Forces (CAAF) has identified five indicators of severity: "(1) the raw numbers—the instances of misconduct as compared to the overall length of the argument; (2) whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length of the panel's deliberations; and (5) whether the trial counsel abided by any rulings from the military judge." *Fletcher*, 62 M.J. at 184 (citation omitted). In *Halpin*, the CAAF extended the *Fletcher* test to improper sentencing argument. 71 M.J. at 480. In assessing prejudice, the lack of a defense objection is "'some measure of the minimal impact' of a prosecutor's improper comment." *Gilley*, 56 M.J. at 123 (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

### 3. Analysis

#### a. Likelihood to Reoffend

We first address Appellant's contention that trial counsel improperly argued that Appellant would reoffend. Since trial defense counsel did not object during the trial counsel's sentencing argument we review the argument for plain error. Trial counsel's argument that five years of confinement was appropriate "[b]ecause what if this happens again" and "what if those anger issues are not really those old anger issues and rear their ugly head late at night" are not impermissible factual arguments that Appellant was likely to reoffend. They are appropriate argument for specific deterrence. In essence trial counsel was arguing that confinement would ensure that Appellant would not reoffend—which is the very meaning of specific deterrence. *See United States v. Halstead*, No. ACM S32546, 2020 CCA LEXIS 27, at *19 (A.F. Ct. Crim. App. 29 Jan. 2020) (unpub. op.) (argument that confinement would "be good" to prevent an appellant "from committing future drug offenses" was proper as it demonstrated specific deterrence); *United States v. Grassey*, No.

ACM 38973, 2017 CCA LEXIS 414, at *8 (A.F. Ct. Crim. App. 22 Jun. 2017) (unpub. op.) (argument that an appellant would not be able to commit crimes in prison was "fair argument regarding the nature of confinement as specific deterrence").

Additionally, trial counsel's argument "[d]on't come back with a sentence that's less than five years for [NA]'s sake to rehabilitate [Appellant] to protect this from happening again" is similarly not improper argument. The argument was proper reference to four different sentencing philosophies; protection of society, rehabilitation, and general and specific deterrence. The statement "even if you think that the risk of [Appellant] doing this again is zero" is also not improper, as it argues that the sentence of confinement for five years would be appropriate even if the panel determined that specific deterrence was not a principal concern in Appellant's case.

Furthermore, trial counsel's argument was a fair comment upon issues raised by Appellant in his sentencing case. Appellant presented evidence of his rehabilitation, and trial defense counsel's argument focused on Appellant's "rehabilitation," "redemption," and "reuniting" with his family and generally portrayed Appellant as someone who would not reoffend. Accordingly, trial counsel was permitted to rebut that argument in addition to arguing for specific deterrence. Trial counsel is not "prohibited from offering comment that provides a fair response to claims made by the defense." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted). In considering the appropriateness of a prosecutor's argument, we "must also take into account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 12 (1985). Although defense counsel in this case had not yet argued that confinement was not necessary, it was a predictable approach based upon the evidence Appellant admitted and Appellant's unsworn statement. Here trial counsel correctly anticipated that defense counsel would argue that no confinement was necessary because Appellant had already been rehabilitated—trial counsel is certainly permitted to preemptively address that argument, when no rebuttal argument was allowed. Additionally, Appellant placed his own anger challenges at issue and offered mitigating evidence during sentencing that he had received treatment for them. Again, trial counsel is permitted to comment on defense sentencing evidence. We see no evidence that trial counsel argued facts not in evidence, or that trial counsel improperly suggested to members that Appellant would reoffend.

Appellant has failed to identify any portion of the argument in which trial counsel either impermissibly argued that: (1) Appellant would reoffend; or (2) there was evidence that Appellant would commit the offense in the future. Rather, Appellant has identified only appropriate argument tied to the principles of deterrence, rehabilitation, and protection of society. Appellant has

failed to identify an error committed by the trial counsel as to recidivism, and certainly has not met the high burden of demonstrating that such an error was plain or obvious.

### b. Inflame the Passions of the Panel

We next consider Appellant's claim that that trial counsel improperly attempted to inflame the passions of the panel when he argued "[a]nd you can't break your child's bones and then come in here and use your family as a shield to not get the punishment that you deserve." Again, trial defense counsel did not object to this statement so we review for plain error. We note at the outset that the record is replete with evidence introduced by the Defense in which witnesses and Appellant himself stated that confinement would be more punishment for the family than for him. Appellant in this case chose to put on a sentencing case in which he repeatedly referenced that his family would suffer more than him. Trial defense counsel used this theme in her argument, stating "your punishment will affect [KA], it will affect [AA] and it will affect [NA]." Trial defense counsel chose a strategy of currying empathy with the panel members by mentioning the impact of the sentence upon Appellant's innocent wife and children. Trial counsel's argument was fair comment in response to the defense sentencing strategy and trial counsel did not commit prosecutorial misconduct by highlighting that strategy directly to the panel. Likewise, we find no error in this statement.

### c. Mitigation Evidence & Appellant's Sentence Recommendation

Finally, we consider Appellant's contention the trial counsel instructed the panel not to consider evidence in mitigation offered by Appellant and improperly argued against Appellant's right to make a sentence recommendation. Since trial defense counsel did not object during trial counsel's argument we again review for plain error.

In support of both arguments, Appellant highlighted one passage from trial counsel's argument where trial counsel stated,

> But don't forget that when defense counsel comes up here, that they are [Appellant's] mouthpiece and they are going to speak to you on behalf of him. And you need to ask yourselves, in what world is it appropriate that you can commit crimes and then come in and tell you what sentence you deserve? To do the cost benefit of your own crimes?

As to Appellant's first argument, we do not find anything in that statement where trial counsel explicitly instructed the panel that they could not consider evidence in mitigation. From the full context of the argument, it is evident that trial counsel never argued that the panel could not consider mitigating evidence. In fact, trial counsel specifically referred the panel to mitigating

11

evidence, telling the panel members to consider not only Appellant's actions "but also his service record, the testimony that we heard, the character letters [Appellant] put in front of you." Additionally, the only testimony elicited during the pre-sentencing portion of the hearing was on Appellant's behalf.

That said, we find that trial counsel's statement overstepped the bounds of propriety and fairness of a prosecutor for other reasons. First, trial counsel's disparaging reference to defense counsel as the Appellant's "mouthpiece" was pejorative and offered only to denigrate the legitimacy of any recommendation made by defense counsel. While it is appropriate to comment on Appellant's sentence recommendation, it is "improper for trial counsel to attempt to win favor with the members by maligning defense counsel." *Fletcher*, 62 M.J. at 181. Moreover, we also agree with Appellant's second argument, and find that the above statement from trial counsel improperly addresses Appellant's clear right to argue for an appropriate sentence. Taken together, trial counsel essentially told the members—incorrectly—that Appellant had no right to recommend a specific sentence, that trial defense counsel was merely parroting Appellant's recommendation, and that any recommendation from trial defense counsel should be ignored. Trial counsel's statement was not just factually and legally incorrect, it broadcast to the members trial counsel's view that Appellant's counsel was merely there to repeat Appellant's requests—requests which trial counsel implored the members to ignore as improper. This statement erroneously implicated Appellant's right to fair sentencing proceeding and his right to counsel, errors we conclude are plain and obvious.

Finding error, we now review for prejudice. *See Fletcher*, 62 M.J. at 184. We note that the above statement consisted of one, isolated statement, in a sentencing argument that spanned seven pages of transcript. While the military judge did not issue an immediate curative instruction, he did instruct the members both before and after trial counsel's argument that Appellant was permitted to make a specific sentence recommendation, and that any recommendations made, by either counsel or Appellant, were only suggestions, and it was solely in the members' discretion to determine an appropriate punishment. In the absence of evidence to the contrary, military members are presumed to follow the military judge's instructions. *United States v. Ricketts*, 23 U.S.C.M.A. 487, 490 (C.M.A. 1975). Finally, the weight of the evidence supporting the conviction was strong and amply supports the sentence imposed by the panel, which was half of the maximum period of confinement available. Therefore, we find this statement did not substantially influence Appellant's sentence, nor otherwise materially prejudice a substantial right of Appellant. We have also reviewed the rest of Appellant's arguments for prejudice and are confident that the members acted "on the basis of the evidence alone." *Fletcher*, 62 M.J. at 184.

"As Appellant was not prejudiced by the sentencing argument, he cannot have been prejudiced by the military judge's failure to interrupt the arguments . . . or the failure of his defense counsel to object to the argument." *Halpin*, 71 M.J. at 480 (citing to *Strickland v. Washington,* 466 U.S. 668, 687 (1984)) (requiring that a defendant claiming ineffective assistance of counsel show he was prejudiced by counsel's deficient performance).

## B. Sentence Appropriateness

Appellant contends his sentence is inappropriately severe in light of his record of service and asks this court to engage in a comparative sentence review.[6] He supports his argument by citing other military justice cases involving child abuse. We disagree and find Appellant's sentence appropriate.

This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c) UCMJ, 10 U.S.C. § 866(c). We review sentence appropriateness de novo, employing "a sweeping Congressional mandate to ensure 'a fair and just punishment for every accused.'" *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (citations omitted).

In determining whether a sentence is appropriate, we consider the "particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). We have a great deal of discretion in determining whether a particular sentence is appropriate, but we are not authorized to engage in exercises of clemency. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

A sentence comparison is required if Appellant can demonstrate that (1) the cited cases are "closely related" to his case, and (2) the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Cases are "closely related" when they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.*

In the present case, Appellant has failed to demonstrate that the cases cited in his *Grostefon* brief are "closely related" to his case. Appellant has not presented any evidence that the other cases he cited involve co-actors, common schemes, or any direct nexus to his case. Additionally, Appellant has not

---

[6] To the extent that Appellant asks this court to consider matters outside the entire record, those matters may not be considered by this court in assessing sentence appropriateness. *See United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

provided any information as to the unique facts and circumstances of these cases or any mitigating or extenuating factors which might have been present in those cases. "The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. Leblanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). While we realize that we may consider any or all of the cases cited by Appellant, even if they are not closely related to Appellant's, we decline to do so here and see no reason to deviate from the general rule set out in *LeBlanc*.

After conducting a review of the entire record, we find that the adjudged and approved sentence is appropriate. In reaching this conclusion, we considered Appellant's unsworn statement, his enlisted performance reports, the defense exhibits submitted at trial, and all the matters submitted by Appellant during clemency. We also considered the facts of the offenses to which Appellant was found guilty and all other properly admitted matters. In this case Appellant physically harmed his infant daughter on multiple occasions, causing severe injury to her on at least two occasions. After the military judge merged Specifications 2 and 3 of Charge I, assault consummated by a battery of NA, for the purposes of sentencing, the maximum term of confinement in Appellant's case was reduced from 17 years to 12 years and included the possibility of a dishonorable discharge. In this case, his sentence to confinement was exactly half of the maximum allowable term of confinement. In light of the significance of his criminal conduct, we find Appellant's approved sentence of a dishonorable discharge, confinement for six years, and reduction to the grade of E-1 is appropriate for the crimes he committed.

## C. Timeliness of Appellate Review

Additionally, we consider whether Appellant is entitled to relief for a facially unreasonable appellate delay. *See Moreno*, 63 M.J. at 135 (citations omitted); *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). We decline to grant such relief.

### 1. Law

We review de novo whether an appellant has been denied the due process right to speedy appellate review. *Moreno*, 63 M.J. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision rendered within 18 months of a case being docketed. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135

(citations omitted). A presumptively unreasonable delay satisfies the first factor, but the government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. Assessing the fourth factor of prejudice, we consider the interests of "prevention of oppressive incarceration;" "minimization of anxiety and concern of those convicted;" and "limitation of the possibility that . . . grounds for appeal, and . . . defenses . . . might be impaired." *Id.* at 138–39 (citations omitted).

### 2. Analysis

Appellant's case was docketed with the court on 17 July 2019. The delay in rendering this decision until just over 19 months after the case was docketed is presumptively unreasonable. The reasons for the delay include the time required for Appellant to file his brief on 6 May 2020, and the Government to file its answer on 2 July 2020.[7] Appellant did not assert his right to timely appellate review, and has made no specific claim of prejudice. We find none.

Finding no *Barker* prejudice, we also find the delay is not so egregious that it "adversely affects the public's perception of the fairness and integrity of the military justice system." *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). As a result, there is no due process violation. *See id.*

Regarding any relief under *Tardif*, in this case we determine that no such relief is warranted in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–24; *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In *Tardif*, the CAAF recognized that "a Court of Criminal Appeals has authority under Article 66(c)[, UCMJ, 10 U.S.C. § 866(c),] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ, 10 U.S.C. § 859(a)]." 57 M.J. at 224 (citation omitted). Furthermore, we as a service Court of Criminal Appeals are required by Article 66(c), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." 10 U.S.C. § 866(c); *see Tardif*, 57 M.J. at 224. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(c), UCMJ, authority to grant relief for the delay in completing appellate review.

---

[7] Appellant also filed a motion for leave to file a supplemental assignment of error on 6 August 2020, based on the United States Supreme Court decision in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), that was decided before Appellant's brief was submitted. Due to Appellant's failure to show good cause to warrant acceptance by the court of this late submission, Appellant's motion was subsequently denied on 1 September 2020.

**D. Erroneous Action**

During our review of this case under Article 66(c), UCMJ, we identified that both the action and the general court-martial order failed to report the deferral of the reduction in grade. This error was not raised by counsel and no prejudice has been alleged. We find a corrected action and CMO are required.

**1. Law**

Proper completion of post-trial processing is a question of law which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). If an action is found to be "illegal, erroneous, incomplete, or ambiguous" during the review of the record of trial under Article 66, UCMJ, 10 U.S.C. § 866, the convening authority may modify the action "[w]hen so directed by a higher reviewing authority." R.C.M. 1107(f)(2); *see also* R.C.M. 1107(g) (stating the convening authority may be instructed by an authority acting under Article 66, UCMJ, to withdraw the original action and substitute a corrected action when it is "incomplete, ambiguous, or contains clerical error").

**2. Analysis**

On 25 March 2019, at Appellant's request, the convening authority deferred Appellant's adjudged reduction in grade as well as the adjudged and mandatory forfeitures of pay pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b, until he took action on Appellant's sentence. *See* Article 57a, UCMJ, 10 U.S.C. § 857a. However, as stated above, both the action and the court-martial order erroneously failed to report the deferral of the reduction in grade. *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 11.29.1.3 (18 Jan. 2019) ("The terms of approved deferrals . . . are reported in the action the convening authority ultimately takes on the case."); *see also United States v. Perea*, No. ACM 32408, 2017 CCA LEXIS 353 (A.F. Ct. Crim. App. 24 May 2017) (unpub. op.); *United States v. Griego*, No. ACM 38600, 2015 CCA LEXIS 502 (A.F. Ct. Crim. App. 5 Nov. 2015) (unpub. op.) (noting that erroneous failure to report the deferral of reduction in grade in the convening authority action typically requires substitution of a corrected action and promulgation of a new CMO). Accordingly, the action is incomplete, and a corrected action and CMO are required.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. § 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**. The record of trial is returned to The Judge Advocate General for remand to the convening authority to withdraw

the incomplete action, substitute a corrected action, and issue a corrected court-martial order. Thereafter, the record of trial will be returned to this court for completion of appellate review under Article 66, UCMJ.[8,9]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[8] The action also contained another error in that it listed the bank account information for KA, which should not have been included. We direct this information be removed in the corrected action and court-martial order.

[9] We also note that the court-martial order, dated 3 July 2019, also contained an error in the sentence section; it states that the sentence included reduction to "E-4," which is an error and should state "E-1." We direct this information be corrected in the corrected action and court-martial order.