# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40809**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Joshua D. ALLEN**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 June 2026

————————————

*Military Judge*: Tiny L. Bowman (scheduling order); Bradley J. Palmer.

*Sentence*: Sentence adjudged 11 December 2024 by GCM convened at Minot Air Force Base, North Dakota. Sentence entered by military judge on 3 February 2025: Dishonorable discharge, confinement for 16 months, and a reprimand.

*For Appellant*: Captain Joyclin N. Webster, USAF; Scott R. Hockenberry, Esquire.

*For Appellee*: Major Heather R. Bezold, USAF; Major Morgan R. Christie, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MCCALL, and KUBLER, *Appellate Military Judges*.

Senior Judge DOUGLAS delivered the opinion of the court, in which Judge MCCALL and Judge KUBLER joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

DOUGLAS, Senior Judge:

A general court-martial composed of a trial judge convicted Appellant, contrary to his pleas, of one specification of sexual assault of his spouse, AG, on divers occasions, when he knew or reasonably should have known that she was asleep, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1,2] The trial judge sentenced Appellant to a dishonorable discharge, confinement for 16 months, and a reprimand. The convening authority approved Appellant's request for waiver of the automatic forfeitures, waiving all automatic forfeitures for six months for the benefit of Appellant's family. The convening authority took no action on the findings or the sentence and provided the wording of the reprimand.

Appellant raises four issues on appeal, which we have rephrased, whether: (1) the trial judge erred by ruling that pursuant to Rule for Courts-Martial (R.C.M.) 701, the full forensic extraction of AG's phone was not in the possession, custody, or control of the Government considering AG's limited consent to search the full extraction; (2) Appellant's conviction is factually sufficient; (3) relief is required for prosecutorial misconduct through the elicitation of improper evidence and argument; and (4) 18 U.S.C. § 922 is constitutional as applied in Appellant's case.[3]

We have carefully considered Appellant's allegation of error as to issue (4) and find that it does not require discussion or relief. *See United States v. Johnson*, 86 M.J. 8, 9 (C.A.A.F. 2025); *United States v. Matias,* 25 M.J. 356, 361 (C.M.A. 1987). As to the remaining issues, we find no error materially prejudicial to Appellant's substantial rights.

## I. BACKGROUND

Appellant married AG, his high school girlfriend, in April 2021, after completing basic training. Later, after technical training, Appellant and AG lived together near his first duty station, Minot Air Force Base (AFB), North Dakota (ND). At first they lived in a rented duplex off base. Then they purchased a home in Minot, ND, in the spring or summer of 2022. By August or September 2022, Appellant filed for divorce. Around the same time, AG reported to law

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Military Rules of Evidence (Mil. R. Evid.), and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was acquitted of one specification of sexual assault and one specification of abusive sexual contact, in violation of Article 120, UCMJ; and two specifications of domestic violence in violation of Article 128b, UCMJ, 10 U.S.C. § 928b.

[3] Issue (4) is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

enforcement that Appellant had sexual intercourse with her on multiple occasions, in both residences, while she was asleep. Additional facts are discussed below pertinent to each assignment of error.

## II. DISCUSSION

### A. Motion to Compel Disclosure, AG's Cell Phone Extraction

Appellant alleges the trial judge erred by denying, in part, his motion to compel disclosure of the full extraction of AG's cell phone.

#### 1. Additional Background

On 25 August 2022, AG reported Appellant to the Air Force Office of Special Investigations (OSI) for sexual assault. During her interview, AG referenced her phone when answering questions. Consequently, investigators asked AG if she would consent to providing information from her phone. AG agreed to provide limited consent to search her cell phone "for pictures, videos, and text messages from 1 Jul[y] [20]21 – 25 Aug[ust] [20]22 regarding [her] husband, Joshua Allen, 5 [Security Forces Squadron]." This limited consent was documented on Air Force (AF) Form 1364, *Consent for Search and Seizure*, and was signed by AG on this same date, 25 August 2022. To effectuate AG's limited consent to search her phone, OSI agents created a digital extraction of the entirety of her phone using Cellebrite equipment and software. Almost 900 pages of communications were produced. Most communications were between AG and Appellant, but because the search was "regarding" Appellant, at least one other communication between AG and Appellant's sister, AB, was discovered and provided to the defense team.

During her initial interview with OSI, AG explained that she was on her phone with someone during one of the reported alleged incidents. She falsely told the agents she did not remember the person's name but identified him by his Xbox "gamertag." This person was later identified as GM.

On 1 April 2023, OSI interviewed GM. GM met Appellant and AG online, while playing video games with them on Xbox Live. GM also chatted privately with AG, using three different platforms: Snapchat, Xbox Party Chat, and Facebook Messenger. GM did not have any saved messages from two of the platforms. He had saved messages on Snapchat and deleted those between 25 July 2022 and 31 July 2022, pursuant to AG's request because she did not want investigators to focus on her relationship with GM instead of her allegations against Appellant. AG and GM officially "dated" beginning in October or November 2022 through the first week of March 2023. However, they never met in person.

In a written discovery request, dated 1 October 2024, the trial defense team sought additional communications from the digital extraction, beyond AG's initial, but limited, consent. Specifically, they requested "all Snapchat," "Facebook Messenger," and "Xbox Party Chat messages" between AG and GM "between on or about 1 January 2022 and 1 April 2023." They explained the relevance of this additional discovery was for their trial preparation, to determine if AG was engaged in an affair with GM, which "may have led her to fabricate these allegations or otherwise be biased against [Appellant]." In a written response, dated 9 October 2024, trial counsel explained they had "requested and received consent from AG" for the additional communications available at OSI and therefore, "grant[ed]" disclosure of this information. However, the Government did not provide any additional information at that time.

On 15 October 2024, trial defense counsel filed a motion to compel the full extraction of AG's phone. On 22 October 2024, both AG, through victims' counsel, and trial counsel, moved the court to deny the full extraction.

On 12 November 2024, the trial judge held a motions hearing. During the hearing, AG testified and explained that one to two months before she reported Appellant for sexual assault, she had moved certain items, including messages or screenshots of messages, photos, and videos to a hidden location on her phone—this way they were not immediately visible to a person looking at the phone. The primary purpose of storing these items in this hidden location was to have evidence collected against Appellant. In their argument, trial defense counsel submitted multiple reasons why they believed access to the full extraction of AG's cell phone was relevant including AG's initial decision to not name GM, and to hide certain items in a hidden folder. They also argued access was relevant to search for a "lack of inculpatory evidence" and metadata. After arguments on the motion to compel access to the full extraction of the cell phone, the trial judge asked trial defense counsel, "Is there anything that you can point to that shows there's anything relevant on there beyond — understanding that, you know — maybe deleted stuff that OSI didn't find, but deleted stuff, anything beyond communications between [AG] and [GM] and [AG] and [AB]?" Trial defense counsel responded, "I think that is all the defense is tracking, Your Honor, is the communications between [AB], [GM], and then obviously [Appellant]."

On 24 November 2024, the trial judge issued a written ruling. After analyzing discovery rules generally, the trial judge discussed AG's limited consent.

> The Fourth Amendment does not limit its application to suspects, defendants, or accuseds [sic]; it defines a "right of the people." The [G]overnment's right to seize and search evidence from "the people" is subject to the reasonableness standard embodied in the Fourth Amendment. Neither this language nor any

binding precedent limits the scope of this constitutional provision to only the privacy interests of an accused.

While R.C.M. 701 seems clearly by its terms to cover the extraction of [AG's] phone, it is equally clear that the rule is intended to apply to information in investigative files as to which the [G]overnment has a right to review. Absent a warrant or consent, the [G]overnment does not have the right for a general exploratory rummaging through someone's cell phone.

The trial judge determined, pursuant to R.C.M. 701, that the Government was in possession, custody, or control, of that information on AG's cell phone to which she provided consent. The trial judge reasoned, "[T]he [G]overnment only had a right to review materials within the scope of that consent and only such material as they had a right to review is subject to R.C.M. 701."

However, the trial judge had no evidence before him to verify that OSI had produced all the information AG had consented to search. Therefore, he ordered trial counsel to "conduct its own review of the OSI extraction of [AG's] phone within the scope of consent provided by [AG] for any material within the scope of that consent that should be disclosed under R.C.M. 701." He further ordered trial counsel to "produce all material subject to [AG's] expanded consent including messages between her and [GM] between January 2022 and April 2023."

Further, the trial judge determined that the remainder of AG's cell phone extraction located at OSI was potentially subject to production pursuant to R.C.M. 703. However, he ruled the trial defense team had not demonstrated the remaining material or any part of it was relevant and necessary. Therefore, the remainder of trial defense counsel's motion for the full extraction of AG's phone was denied.

On 26 November 2024, trial counsel wrote in an email to defense counsel that the "second consent from [AG] resulted in no responsive records." Further, while explaining which search terms were used to search the full extraction, trial counsel provided more discovery related to AG's initial but limited consent.

**2. Law**

Article 46(a), UCMJ, 10 U.S.C. § 846(a), states, "the trial counsel, the defense counsel, and the court-martial shall have *equal* opportunity to obtain witnesses and other evidence . . . ." (Emphasis added). The Government shall, after service of charges, upon a defense request, permit inspection of items "relevant to defense preparation." R.C.M. 701(a)(2)(A)(i).

"An appellate court reviews a military judge's decision on a request for discovery for abuse of discretion." *United States v. Roberts,* 59 M.J. 323, 326 (C.A.A.F. 2004) (citing *United States v. Morris*, 52 M.J. 193, 198 (C.A.A.F. 1999)). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *Id.*

There are "two categories of disclosure error: (1) 'cases in which the defense either did not make a discovery request or made only a general request for discovery'; and (2) cases in which the defense made a specific request for the undisclosed information." *United States v. Braum*, __ M.J. __, No. 25-0046, 2026 CAAF LEXIS 343, at *8 (C.A.A.F. 8 Apr. 2026) (quoting *Roberts,* 59 M.J. at 326–27). "[And f]or cases in the second category, [appellate courts] appl[y] the heightened constitutional harmless beyond a reasonable doubt standard." *Id.* (first alteration in original) (quoting *United States v. Coleman*, 72 M.J. 184, 187 (C.A.A.F. 2013)).

"The failure to 'disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial.'" *Id.* (quoting *Coleman*, 72 M.J. at 187). The prejudice determination is based upon the entire record. *Id.* (citing *Morris*, 52 M.J. at 197).

An owner of a cell phone can restrict her consent to specific parts of the phone when she gives third-party access to her phone. *Id.* at *19–20 (Hardy, J., concurring) (citing *United States v. Black*, 82 M.J. 447, 452–53 (C.A.A.F. 2022)). The "key consideration in assessing Fourth Amendment consent cases is reasonableness, rather than technical property interests." *Black*, 82 M.J. at 452.

Applying "the hierarchy of laws," Judge Hardy reasoned, "When a Rule for Courts-Martial conflicts with the requirements of the Constitution, the rule must yield." *Braum*, 2026 CAAF LEXIS 343, at *22 (Hardy, J., concurring) (citing *Marbury v. Madison*, 5 U.S. 137, 177 (1803)) ("recognizing the Constitution as the 'fundamental and paramount law of the nation'").

### 3. Analysis

On appeal, Appellant maintains the complete extraction of AG's cell phone was within the possession, custody, or control of the Government. Further, Appellant argues that because the trial defense team believed full access was relevant for their diligent preparation of their case, the Government had a duty to produce the complete extraction for inspection. At trial, and on appeal, the Appellant, in his brief, recognized this issue was discussed in this court's decision in *United States v. Braum*, No. ACM 40434, 2024 CCA LEXIS 419 (A.F. Ct. Crim. App. 10 Oct. 2024) (unpub. op.). Further, at the time Appellant filed

his appeal before our court, counsel for Appellant recognized our court's decision on this issue was pending review by the United States Court of Appeals of the Armed Forces (CAAF). *See United States v. Braum*, 85 M.J. 370 (C.A.A.F. 2025) (order granting petition for review). Appellant asserts that military courts' interpretation of the R.C.M.s "must be" rooted in their text and interpreted in accordance with the "plain meaning" therein, relying upon *United States v. Vargas*, 83 M.J. 150, 154 (C.A.A.F. 2023) (interpreting R.C.M. 701(g)(3)(D) using its plain meaning). Nonetheless, Appellant writes, "The CAAF decision in *Braum* will likely settle this question one way or the other."

Whether the question of a person's limited consent to search her phone thereby limits the defense's ability to access the entirety of her cell phone's extraction located at OSI is a settled matter, or not, we note that Judge Hardy authored two key opinions at issue here—*Vargas* and *Black*—and the concurring opinion in *Braum*. Appellant argues *Vargas* applies here, and we should read R.C.M. 701 literally, finding Appellant is entitled to inspect the full extraction of AG's cell phone. Despite Appellant's argument, *Vargas* is minimally relevant to our analysis in his case. When Judge Hardy wrote in *Vargas*, that their holding was rooted "as it must be, in the text of R.C.M. 701(g)(3)(D)," he was referencing principles of statutory construction. *Vargas*, 83 M.J. at 154 (citing *United States v. Bergdahl*, 80 M.J. 230, 235 (C.A.A.F. 2020)). Judge Hardy's opinions in *Black*, and in the concurrence in *Braum*, are on point, as discussed below.

Here, initially, and in writing, AG limited her consent to searching her phone "for pictures, videos, and text messages from 1 Jul[y] [20]21 – 25 Aug[ust] [20]22 regarding [her] husband, Joshua Allen, 5 [Security Forces Squadron]." Later, after the investigation unfolded, and the trial defense counsel requested an expansion of the discovery from the cell phone extraction, AG consented to the Government searching her phone for "all Snapchat," "Facebook Messenger," and "Xbox Party Chat messages" between AG and GM "between on or about 1 January 2022 and 1 April 2023." In summary, AG consented to the Government's search, and disclosure, of pictures, videos, and text messages and any images of text messages, regarding her and Appellant between the dates of 1 July 2021 and 25 August 2022, as well as all messages from all known platforms in which there were communications between AG and GM between 1 January 2022 and 1 April 2023. The Defense was provided with over 900 pages of communications, the majority of which are between AG and Appellant. Whether the Government investigators honored the limited consent informs whether AG waived her privacy interests in her remaining cell phone data or waived the legal protection over that data, as explained in Judge Hardy's concurring opinion in *Braum*, relying upon his decision in *Black*. *Braum*, 2026 CAAF LEXIS 343, at *19–20 (Hardy, J. concurring) (explaining that if law enforcement disregards the limited consent, and their assurances

to the owner of the cell phone, the evidence would have been suppressed as an illegal search that violates the owner's reasonable expectations of privacy, and citing *Black*, 82 M.J. at 452–53).

Here, the Government honored AG's limitations on her consents to search, and did not search for themselves, the entire extraction OSI had made. In fact, there is no information before us that but for the search capabilities of Cellebrite technology, OSI would have had any reason to have a full extraction of AG's cell phone contents. The Government provided the Defense all that they found within the parameters of AG's consent. In other words, Article 46(a), UCMJ, is met in that "the trial counsel, the defense counsel, and the court-martial [had] *equal* opportunity to obtain" AG's cell phone evidence, albeit limited by her consent.

Evaluating the trial judge's ruling even more simply, Appellant does not explain what information may have existed on the remainder of the extraction that may have been relevant to their preparation which was not already provided to them. In trial defense counsel's own words, all the Defense was tracking were the communications between AG, and AB, GM, and Appellant. When AG was making her initial report, she referenced her cell phone. This led investigators to ask her if they could extract the contents of her phone, which she limited to communications "regarding" Appellant. AG did not identify GM and did not consent to searching her phone at that time for communications with GM. However, later upon request, she did grant a search of the extraction of her phone for communications with GM. None were found. In sum, the Government did permit inspection of items "relevant to defense preparation." R.C.M. 701(a)(2)(A)(i). Whatever additional content within the extraction of the cell phone was relevant to the defense preparation, was not articulated at trial, and is still not articulated on appeal.

The trial judge determined AG's limited consent was reasonable, channeling Judge Hardy's legal reasoning in *Black*, which had been decided by the time of his ruling, and as it turns out, in *Braum*, which was still pending at the time of the trial judge's ruling in Appellant's case. The key considerations included AG's limited consents, the Government's decision to honor the parameters of her consents, and that the Defense could not specify what else was relevant to their preparation. We find the trial judge did not abuse his discretion. *See Roberts,* 59 M.J. at 326. His findings of fact were supported by the evidence; he was correct about the applicable law; and he applied it properly. *Id.*

Because we find the trial judge did not err, applying the heightened standard of harmless beyond a reasonable doubt is not necessary. *Braum*, 2026 CAAF LEXIS 343, at *8. But if we were to consider prejudice, applying the heightened standard, we would consider that the Defense was provided over 900 pages of communications, and were provided all the categories of evidence

they were "tracking" as relevant to their preparation. Finally, upon considering the entire record, we see no information that any undisclosed evidence might have affected the outcome of the trial. *Id.*

## B. Factual Sufficiency

### 1. Additional Background

AG stated that during the latter portion of their lease at the first residence (around early summer 2022), the Appellant engaged in sexual intercourse with her while she was asleep. She had not granted consent prior to falling asleep. She noted that because she is a heavy sleeper, she did not awaken during these incidents.[4] After sex, Appellant would nudge AG awake by pushing her or pushing her towards the side of the bed to prompt her to use the restroom. AG was prone to urinary tract infections and had informed Appellant she needed to use the restroom after sex to help prevent the onset of an infection. On these occasions when Appellant woke AG to use the restroom, she did awaken, and did use the restroom. AG knew Appellant had had sex with her due to Appellant's semen inside her and around her vaginal area, and due to her underwear, shorts, or pants being pulled either halfway off, or completely off her legs. In the beginning, AG felt "very numb" to it; she thought "maybe that was a normal thing that people d[id] in relationships." She knew she did not agree to having sex with Appellant while she was asleep. After they moved into their house in Minot, in the summer of 2022, Appellant's pattern of behavior continued. Between the two residences, AG alleged Appellant had sex with her while she was asleep approximately four to five times a month but did not specify the number of months.

Following their move to their Minot residence, their relationship deteriorated. AG subsequently recorded a conversation with the Appellant on her mobile phone, which was admitted into evidence as Prosecution Exhibit 1. During this recorded exchange, AG confronted Appellant about a variety of concerns, including Appellant having sex with her while she was asleep.

> [AG]: Why f[**]k me while I'm sleeping? Why not f[**]k me when I'm awake?
>
> [Appellant]: Because whenever you're awake you usually don't want to do it.

AG also explained that on numerous occasions upon being confronted, Appellant denied having sex with her while she was asleep.

---

[4] Appellant was also charged, and acquitted, of having sex with AG, without her consent, in violation of Article 120(b)(2)(A), UCMJ, 10 U.S.C. § 920(b)(2)(A), for those occasions in which AG did awaken.

**2. Law**

We review questions of factual sufficiency when an appellant (1) asserts an assignment of error and (2) shows a specific deficiency in proof. *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024) (citing Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i)).

Article 66(d)(1), UCMJ, provides:

> (B) FACTUAL SUFFICIENCY REVIEW.
>
> > (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.
>
> > (ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—
>
> > > (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and
>
> > > (II) appropriate deference to findings of fact entered into the record by the military judge.
>
> > (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*). The factual sufficiency standard applies to courts-martial in which every finding of guilty in the entry of judgment is for an offense occurring on or after 1 January 2021. *See* The National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(e)(2), 134 Stat. 3388, 3612–13 (1 Jan. 2021).

The requirement of "appropriate deference" when a Court of Criminal Appeals weighs the evidence and determines controverted questions of fact "depend[s] on the nature of the evidence at issue." *Harvey*, 85 M.J. at 130. This court has discretion to determine what level of deference is appropriate. *Id.* at 131. In order for this court "to be clearly convinced that the finding of guilty was against the weight of the evidence, two requirements must be met." *Id.* at 132. "First, [we] must decide that the evidence, as [we] weighed it, does not

prove that the appellant is guilty beyond a reasonable doubt. Second, [we] must be clearly convinced of the correctness of this decision." *Id.* (emphasis omitted).

In order to convict Appellant of sexual assault of AG as charged in this case, the Government was required to prove that at or near Minot Air Force Base, North Dakota, on divers occasions, between on or about 1 June 2021 and on or about 31 July 2022: (1) Appellant committed a sexual act upon AG by penetrating her vulva with his penis; (2) that AG was asleep; and (3) that Appellant knew or reasonably should have known that AG was asleep. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(2)(e). "The term 'sexual act' means the penetration, however slight, of the penis into the vulva . . . ." *MCM*, pt. IV, ¶ 60.a.(g)(1)(A).

### 3. Analysis

Appellant requests a factual sufficiency review of his conviction and has asserted a showing of a specific deficiency in proof, submitting that the Government failed to prove he penetrated AG while she was asleep. Appellant alleges AG is biased and had an inability to accurately perceive and recall events. Appellant's claim of deficiency is sufficiently specific for our analysis.

We find Appellant's conviction for sexual assault upon AG while she was asleep on divers occasions as charged in Specification 2 of Charge I factually sufficient. AG testified that on several occasions, towards the end of their rental agreement in their first residence, which was early summer 2022, and that on several occasions at the beginning of their time in their new residence in Minot, ND, which was July and August 2022, Appellant had sex with her while she was asleep. Upon completing sex with AG, Appellant would nudge her awake, or push her to the side of her bed, so that she knew she needed to get up and use the restroom. Upon entering the restroom, she knew Appellant had had sex with her because of Appellant's excreted fluid on her and because her underwear, shorts, or pants, whatever she was wearing at the time, was pulled either partially off her legs or completely off her legs.

Appellant argues AG is not credible because of her challenges in remembering events with any level of specificity. AG admitted to a poor memory in general but also explained that these events were causing her to feel "overloaded." She also explained she delayed reporting Appellant for sexually assaulting her while she was sleeping because she did not want to get Appellant "in[to] trouble." AG's statements alleging Appellant's sexual acts upon her, while she was asleep, and he would have known she was asleep, were consistent from the time she reported the sexual assaults to law enforcement through trial. In addition to AG's testimony that Appellant sexually assaulted her while she was sleeping, she recorded Appellant explaining that the reason he had sex with her while she was sleeping is because she did not want sexual

intercourse with him when she was awake. Recognizing that Appellant also denied ever sexually assaulting AG while she was asleep, as well as giving equivocal responses such as "I don't know" upon her multiple confrontations, we find Appellant's repeated denials inconsistent with his recorded statement.

After weighing all the evidence and having given appropriate deference to the fact that the trial judge saw and heard the witnesses, this court does not conclude that the findings of guilty were against the weight of the evidence as to Specification 2 of Charge I and Charge I. Thus, the findings of guilty are factually sufficient.

## C. Prosecutorial Misconduct: Improper Evidence and Argument

Appellant claims he was prejudiced from trial counsels' elicitation of improper evidence in two ways, and improper argument in four ways. Specifically related to the improper evidence errors, Appellant alleges trial counsel elicited from one of their witnesses, OSI Special Agent (SA) KB, improper human lie detector and expert-like testimony. Specifically related to improper argument errors, Appellant alleges trial counsel asked the trial judge to consider spillover between the two charged theories of liability for sexual assault, character and propensity evidence for Appellant's uncharged conduct, unnoticed Mil. R. Evid. 404(b) (*Crimes, Wrongs, or Other Acts*) evidence, and generally expected crime victim behavior as facts not in evidence. Appellant offers these errors are constitutional in nature and alleges prejudice from the improper evidence and arguments, asking us to view them "cumulatively."

### 1. Additional Background

SA KB was the lead investigative agent and had interviewed AG when AG reported Appellant for sexual assault. SA KB testified in the Government's case-in-chief. The trial counsel asked SA KB if during the interview of AG, AG appeared to be hiding GM's existence from her. SA KB answered, "No," explaining that during the interview, AG messaged GM to provide his contact information to SA KB. Additionally, trial counsel asked SA KB if she were to become aware of obstruction of justice by either GM or AG, would SA KB have investigated that obstruction. SA KB explained that she would investigate if she had jurisdiction, but if not, she would refer it to the local police department. This testimony by SA KB is one of the two pieces of evidence Appellant claims to be improper as human lie detector testimony. Further, trial counsel asked SA KB if, in her nine years of service as an OSI agent, any victim had ever given her consent to forensically extract her phone. SA KB answered to the best of her knowledge in her own cases, AG was "the first." This testimony is the second piece of evidence Appellant claims to be improper expert-like testimony.

In closing argument on findings, the trial counsel argued the two theories of criminal liability charged for sexual assault (without consent, and while AG was asleep) both involved Appellant's same actions during and after sex, calling Appellant's behavior "the same M.O. [(modus operandi)], right?" Appellant alleges this argument was not noticed and amounted to arguing for spillover. Next, trial counsel argued Appellant's reactions to AG's other accusations of unrelated misdeeds corroborated his admission of sexually assaulting her while she was asleep. Appellant alleges this amounts to improper character and propensity argument. Then trial counsel argued Appellant was trying to get ahead of AG's allegations of sexual assault against him by filing for divorce. Again, Appellant submits this argument was unnoticed and improper propensity argument. Finally, trial counsel argued that AG may not have reacted the same way a different sexual assault victim might have, in that AG did not immediately report Appellant for sexual assault. Instead, she attempted to work on her marriage. Appellant alleges this argument was arguing facts not in evidence and improperly encouraged the trial judge to consider those facts in violation of Appellant's rights to confrontation and opportunity to impeach.

At trial, defense counsel did not object to these alleged misdeeds now raised as error on appeal.

**2. Law**

"Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citations omitted). A prosecutor's interest "in a criminal prosecution is not that [the Government] shall win a case, but that justice shall be done." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

We review prosecutorial misconduct and improper argument de novo. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). When no objection is made at trial, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (footnote and citation omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* at 401 (quoting *Fletcher*, 62 M.J. at 179).

"[A]rgument by a trial counsel must be viewed within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985))

(additional citations omitted). In performing our review, "it is improper to 'surgically carve' out a portion of the argument with no regard to its context." *Id.*

> Appellate judges must exercise care in determining whether a trial counsel's statement is improper or has improper connotations. The [United States] Supreme Court has emphasized that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."

*United States v. Palacios Cueto*, 82 M.J. 323, 333 (C.A.A.F. 2022) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). Thus, "[a] statement that might appear improper if viewed in isolation may not be improper when viewed in context." *Id*. (citing *Donnelly*, 416 U.S. at 645).

In analyzing prejudice from a prosecutor's improper argument, we consider: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Andrews*, 77 M.J. at 402 (quoting *Fletcher*, 62 M.J. at 184).

"[T]he lack of a defense objection is 'some measure of the minimal impact of a prosecutor's improper comment.'" *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

### 3. Analysis

After carefully reviewing the entire record and considering Appellant's submission of errors regarding trial counsel's eliciting improper evidence, we find that they do not require further discussion or relief. *See Matias,* 25 M.J. at 361.

Reviewing for plain error each of Appellant's four submissions of prosecutorial misconduct in trial counsel's closing argument, we briefly discuss the one alleging trial counsel inappropriately argued for spillover. Comparing Appellant's actions of the sexual assaults charged while AG was asleep with those charged as without AG's consent, trial counsel argued the following:

> What he's doing when she comes home, is waiting for her to go to sleep. We know she doesn't want to do it when she's awake, he's told us that. So she goes to sleep, on her side, in their bed, and he comes into the room. Slowly, quietly, all the things she's told us about how he did it. Pants and underwear pulled down while she's on her side, turned away from him, holding her hips to keep her steady, holding her breasts. Ejaculates inside of her, but there's no ability for her to say no or to say yes. He doesn't even ask, Your Honor.

> Even the times when [AG] woke up in the middle of his penetra-
> tion, Airman Allen never said a word to her. Never said a word.
> Didn't ask, didn't give her a chance to say yes. And the burden
> is on the actor to obtain consent. He didn't even try.
>
> To the extent that there's any mistake of fact as to consent,[5]
> you don't get the benefit of that defense if you don't even ask, if
> you don't just take the reasonable care — due care. It cannot be
> from a lack of effort to try to ascertain whether or not she would
> actually consent. And his actions after the sexual assaults, when
> Airman — when [AG] woke up during the penetration, were the
> same as the sexual assault that she did not wake up during. I
> think that's important, Your Honor.
>
> He was — it was the same M.O., right? It was the same thing
> with both of them. It was the slower penetration than normal. It
> was the quietness. It was only waking her up — to pushing her,
> nudging her off of the bed, because he knew about the UTIs,
> right? And that was reaffirmed through [SA KB] that [AG] had
> told him that there's a prior consistent statement. He was also
> consistent in ejaculating in her every time, of pushing her off the
> bed. So these — this shows you know — that there can be some
> level of, I don't know — goodness in him, that in his mind, well,
> I'm at least, you know — telling her to go clean up and, and get
> a, you know, to save her the, the, the urinary tract infection,
> right? He's not a confrontational guy. He's 90 pounds soaking
> wet, Your Honor.

Trial counsel's argument to the trial judge comparing Appellant's actions before, during, and after the charged sexual assaults was consistent with AG's testimony at trial. In other words, trial counsel was referring to the evidence admitted at trial. Trial counsel's arguments here do not amount to asking the trial judge to consider the facts of one offense as proof of a different offense. We do not find error. *Andrews*, 77 M.J. at 398. However, assuming *arguendo* there was error, we do not find prejudice. The severity of this particular argument was low, and the weight of the evidence supporting the conviction (sexual assault while she was asleep) was high. *Id.* at 402. Finally, we consider Appellant

---

[5] Counsel for both parties and the trial judge agreed the defense of mistake of fact as to consent was reasonably raised by the evidence for Specification 1, Charge I, a violation of sexual assault, without AG's consent. Again, Appellant was acquitted of this offense.

was acquitted of the allegation of sexual assault against AG without her consent, and Appellant was tried by a military judge alone.

### III. CONCLUSION

The findings as entered are correct in law and fact. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2024 *MCM*). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

SEAN J. SULLIVAN, Maj, USAF
Acting Clerk of the Court